**Damacio Y. TORRES, Petitioner–Appellee,**

v.

**K.W. PRUNTY, in his capacity as Warden, Respondent–Appellant.**

**No. 99–55662.**

United States Court of Appeals, Ninth Circuit.

Submitted July 13, 2000.[1]

Filed Sept. 8, 2000.

1. The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Kyle S. Brodie, Deputy Attorney General, Los Angeles, CA, for respondent-appellant.

Marilyn Drath, Sausalito, CA, for petitioner-appellee.

Before: CANBY, REINHARDT, and FERNANDEZ, Circuit Judges.

CANBY, Circuit Judge:

The State of California appeals from the district court's grant of habeas corpus relief to Damacio Torres under 28 U.S.C. § 2254. The district court concluded that Torres's due process rights were violated when the state trial court failed to hold a hearing to determine whether Torres was competent to stand trial, despite considerable evidence suggesting that he was not. *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The state trial and appellate courts' findings that the evidence did not require a competency hearing under *Pate*

are findings of fact to which we must defer unless they are "unreasonable" within the meaning of 28 U.S.C. § 2254(d)(2). *See Maggio v. Fulford*, 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam) (treating question whether evidence required competency hearing as a question of fact). We conclude that these findings were "unreasonable" within the meaning of § 2254(d)(2), and that Torres was entitled to a competency hearing under *Pate*. We therefore affirm the district court's grant of habeas relief.

## BACKGROUND

On February 8, 1993, Damacio Torres entered the County/USC Medical Center in Los Angeles, California, where he shot three physicians and took a fourth physician and a nurse hostage. After a short standoff, Torres released his hostages and was apprehended.

In the ensuing months, Dr. Stephen Wells, a psychologist appointed by the court, examined Torres for a total of ten and one-half hours. Wells diagnosed Torres as having a severe delusional (paranoid) disorder. Torres was not schizophrenic and suffered no hallucinations, but his psychotic delusions were extreme. Wells administered a standard personality inventory test and opined that Torres registered "one of the most disturbed profiles on this instrument seen by this evaluator, pointing clearly to the presence of psychotic delusional ideation." Torres, concluded Wells, believed himself to be the "victim of a medical conspiracy." Torres suffered from delusions that:

- physicians at County/USC had injected him with the AIDS virus;
- physicians at County/USC had conspired with those at other clinics by means of a computerized medical records system to ensure that he received no treatment;
- one of the goals of the conspiracy was to see him evicted into the street where he would die "like a dog;"

- he was tracked and followed by physicians at County/USC who concealed their identities;
- a physician at County/USC recently and deliberately tore his intestine with a tool inserted into his anus;
- he emanated a stench and odor so powerful that it could be smelled throughout his hotel and threatened his eviction; and,
- his body and limbs were so distorted that he was a freak of nature.[2]

In addition to identifying Torres's delusional beliefs, Wells tested to determine whether Torres could have been lying about these delusions. He concluded that Torres was "fully credible and not seeking consciously to deceive in any way." On the strength of these and other findings, Wells concluded that Torres was unable to distinguish right from wrong at the time of the offense and appeared to satisfy the legal test for insanity. In a one-sentence note, Wells also opined that Torres was competent to stand trial.

Torres initially pleaded not guilty by reason of insanity. The court then appointed physicians to assess Torres's sanity: Dr. Wells for the defense, and Dr. Sharma for the State. Dr. Sharma concluded that Torres was sane at the time of his offenses. Both Dr. Wells and Dr. Sharma filed reports with the court. Six months after his initial appearance, Torres again appeared in court and withdrew his insanity plea, even though his counsel refused to join in the withdrawal. Torres sought to have a new lawyer appointed, or to represent himself; the court refused. The court never addressed the question of whether Torres was competent to stand trial.

In the middle of Torres's trial, his counsel informed the court that she believed that there might be a doubt about Torres's competence. In a colloquy between Torres's counsel and the trial court judge, which we relate in full below, the judge stated that Torres was not entitled to a competency hearing under *Pate.* Torres was subsequently convicted of three counts of attempted premeditated murder and two counts of false imprisonment of a hostage.

Torres's direct and collateral appeals were denied by the California Court of Appeal and the California Supreme Court. The Court of Appeal found that no competency hearing was required under *Pate.* Torres then filed this federal petition for habeas corpus. The district court granted relief, but did not hold an evidentiary hearing.

## RIGHT TO A COMPETENCY HEARING UNDER *PATE*

■ The sole issue on appeal (and the sole issue presented by Torres's petition for habeas corpus) is whether the state trial judge violated Torres's due process rights by failing to hold a competency hearing to determine whether Torres was competent to stand trial.[3] The substantive standard for determining competence to stand trial is whether Torres had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him.' " *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The due process issue directly raised by Torres, however, is not whether he was competent, but whether he was entitled to a hearing to determine his competence. "[W]here

2. Testing indicated that Torres had suffered injuries consistent with brain damage resulting from head trauma. Wells suggested that this injury could represent an organic cause for Torres's delusions.

3. We have jurisdiction over the State's appeal under 28 U.S.C. § 2253. Because Torres

filed his petition after April 24, 1996, his petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (1996) ("AEDPA"). *See Lindh v. Murphy,* 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the trial judge on his own motion must ... conduct a hearing to determine competency to stand trial." *De Kaplany v. Enomoto,* 540 F.2d 975, 979 (9th Cir.1976) (en banc); *see Drope v. Missouri,* 420 U.S. 162, 172–73, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate,* 383 U.S. at 385, 86 S.Ct. 836 (establishing right to hearing).[4]

■ The district court found a violation of *Pate;* it did not reach the substantive question of whether Torres was competent under *Dusky.* We review de novo the district court's decision to grant habeas relief under *Pate. Houston v. Roe,* 177 F.3d 901, 905 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000).

### A. *Standard of review applicable to state court findings*

Before turning to the merits of Torres's claim, we address the standard of review to be applied to the state trial and appellate courts' determinations that no hearing was required under *Pate.* Like the district court, we are bound to apply the standards set out in 28 U.S.C. § 2254(d) to the state courts' determinations that there was no "bona fide doubt" regarding Torres's competence. Section 2254(d) permits us to grant relief only if the state court's adjudication: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),

(2); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).

■ The state courts correctly identified *Pate* as the controlling standard, and they did not reach a result different from *Pate* on indistinguishable facts; their determination therefore was not "contrary to" clearly established Supreme Court law. *See Williams,* 120 S.Ct. at 1519. But the decision that the evidence did not require a *Pate* hearing could be either "an unreasonable application" of *Pate* (under the second clause of § 2254(d)(1)) or "an unreasonable determination of the facts in light of the evidence presented" in state court (under § 2254(d)(2)). Because the Supreme Court has treated the question whether a competency hearing is required as an issue of fact, *see Maggio,* 462 U.S. at 117, 103 S.Ct. 2261, we are inclined to analyze the state court's decision in this case as a potentially unreasonable determination of the facts.

■ If we are wrong, and the issue is better characterized as one of "unreasonable application" of *Pate* under § 2254(d)(1), it makes no difference for purposes of the standard of review. With respect to the "unreasonable application" clause, the Supreme Court has made clear that unreasonableness means more than mere incorrectness. *See Williams,* 120 S.Ct. at 1522. It is an objective standard, however, and does not require that *all* reasonable jurists would agree that the determination was unreasonable. *See id.* at 1521–22. In light of these pronouncements from *Williams* and the purposes of the amended § 2254, we have recently concluded that the "unreasonable application"

---

4. In *Pate,* the Supreme Court referred to the Illinois statutory standard of *"bona fide doubt"* without stating that it was the constitutionally minimum standard. *See* 383 U.S. at 385, 86 S.Ct. 836. *Drope* found Missouri's standard of " 'reasonable cause to believe' " the defendant was incompetent to be a constitutionally sufficient standard for triggering a competency hearing. 420 U.S. at 172–73, 95 S.Ct. 896. In *De Kaplany,* however, our court applied *Pate* 's "bona fide doubt" standard as

the constitutional standard. *See* 540 F.2d at 983.

California requires a hearing if a "doubt" exists. *See* Cal.Penal Code § 1368; *People v. Stankewitz,* 32 Cal.3d 80, 184 Cal.Rptr. 611, 648 P.2d 578, 584–85 (1982). Apart from this standard, our holding, like those of the Supreme Court in *Pate* and *Drope,* is that a hearing was constitutionally required by the evidence before the trial court.

standard of § 2254(d)(1) is equivalent to the "clearly erroneous" standard that we apply to review of factual determinations by district courts. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1153–54 (9th Cir.2000). We see no reason why this standard of unreasonableness for purposes of the "unreasonable application" clause of § 2254(d)(1) would not apply as well to "unreasonable determination of the facts in light of the evidence" under § 2254(d)(2). Thus, although we proceed to analyze the state courts' decision for unreasonableness in determining the facts, we apply the same standard of deference that we would apply if we were determining the unreasonableness of an application of *Pate* to these facts. We may grant Torres relief not if we merely conclude that he "has the better of two reasonable ... arguments," but only if we are left with "a 'firm conviction'" that the determination made by the state court was wrong and that the one Torres urges was correct. *Van Tran,* 212 F.3d at 1153–54. We turn, then, to the state courts' ruling.

### B. *Pate* claim

In the middle of Torres's trial, Torres's counsel and the state trial court judge engaged in the following colloquy in open court:

Counsel: In discussing this case with Dr. Wells, I informed him of the proceedings this morning and the threats and why Mr. Torres is chained, and informed him of some of the discussions I had with Mr. Torres in the lockup, and because Mr. Torres now believes that I am part of the conspiracy, along with your honor, that *there is possibly a doubt as to whether Mr. Torres is competent at this point.*

. . .

Court: ... Ms. Croker, I don't see anything different and apart that would indicate that he might be suffering from a situation that would render him incompetent to stand trial under [Cal.Penal Code § ] 1368. He asked to have you dismissed prior to the trial. And nothing has really changed. He testified on the witness stand. I watched his demeanor. He's no different than any other defendant who is dissatisfied with his attorney.

Counsel: Well, the only difference I see is that I was never before thought to be part of the conspiracy or in cahoots with your honor or County USC Hospital, and apparently I haven't —

Court: This is focusing in on not getting his way. I don't see any change. Clearly, he understands he wants to get rid of you because you haven't done what he's wanted you to do.

. . .

Court: ... Unless there is something specific, the court will not declare a doubt [justifying a competency hearing under *Pate* ].

(Emphasis added).

■ This exchange demonstrates that the trial court made two findings relevant to Torres's *Pate* claim. First, the court found that Torres was not credible when he stated to his counsel that he believed she was part of the conspiracy against him. Second, the court found that there was no evidence sufficient to justify a *Pate* hearing on Torres's competence to stand trial. We conclude that both were "unreasonable determination[s]" within the meaning of 28 U.S.C. § 2254(d)(2).

■ Torres was entitled to a hearing on his competency to stand trial if a reasonable judge would have found a "bona fide doubt" of competence. *See De Kaplany,* 540 F.2d at 979–80 (interpreting *Pate* ). Torres was competent only if, at the time of trial, he had " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him.' " *Dusky,* 362 U.S. at 402, 80 S.Ct. 788. Factors going to Torres's competence include (1) evidence of Torres's irrational behavior; (2) Torres's demeanor at trial; and (3) "any prior medical opinion on competence

to stand trial." *Drope*, 420 U.S. at 180, 95 S.Ct. 896.

■ The first of the trial court's findings was unreasonable. It is true that a finding by a trial court regarding credibility is ordinarily the kind of finding to which we would defer on collateral review. *See Thompson v. Keohane*, 516 U.S. 99, 111, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). But here the factfinding procedure by the judge was clearly inadequate. Defense counsel twice related to the court that Torres now believed that defense counsel and the court were part of the conspiracy against Torres; counsel then suggested that a competency hearing would be appropriate. The court refused to order a hearing. It concluded, without questioning Torres, that (1) Torres was simply continuing his effort to remove his counsel, (2) that Torres wanted to get rid of counsel because she was not doing what he wanted her to do, and (3) that Torres was "no different than any other defendant who is dissatisfied with his attorney."

In light of the previous medical evaluation by Dr. Wells, it was unreasonable for the court not to make a more complete inquiry into the nature of defense counsel's statement that Torres now believed the conspiracy against him included his counsel and the trial judge. Although Wells had opined that Torres was competent to stand trial, he also concluded, on the strength of testing designed to detect dissembling, that Torres was "fully credible in his statements [that he was a victim of a medical conspiracy] and not seeking consciously to deceive in any way." Thus, the Wells evaluation should have alerted the trial court to the strong possibility that Torres was not dissembling when he told his attorney that he now believed she and the trial judge were part of the conspiracy against him. At the very least, the trial court could not have concluded reasonably that Torres was disingenuous without inquiring of Torres himself, or of Dr. Wells. On these facts, merely observing Torres's demeanor in court would be insufficient factfinding to make a determination about Torres's credibility.

■ The trial court's second finding, that there was no bona fide doubt regarding Torres's competence, was conclusionary and not fairly supported by evidence on the record.[5] After dismissing the notion that Torres's conspiracy delusion had now spread to his attorney and the court, the judge stated "[u]nless there is something specific, the court will not declare a doubt." But there was more than sufficient evidence before the trial judge at that time. First, defense counsel had proffered evidence that the defendant would no longer be able to assist rationally in his defense because he believed his attorney was part of a greater conspiracy against him. *See United States v. Nagy*, No. 96–CR601, 1998 WL 341940, at *7 (S.D.N.Y. June 26, 1998) (defendant's paranoid delusions of conspiracy against him rendered him unable to assist in his defense despite factual understanding of role of lawyers and judge in courtroom), *aff'd* 173 F.3d 847, 1999 WL 245869 (2d Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 105, 145 L.Ed.2d 89 (1999); *United States v. Blohm*, 579 F.Supp. 495, 504–05 (S.D.N.Y. 1983) (amended opinion). Torres's defense counsel was in the best position to evaluate Torres's competence and ability to render assistance. *See Medina v. California*, 505 U.S. 437, 450, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Her recommendation to the judge, while not necessarily sufficient to create a bona fide doubt, should have been considered seriously by the court. *See id.*

■ Finally, defendant's unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required. The district court catalogued Torres's peculiar behavior: he insisted on wearing jailhouse blues; threatened to assault his attorney; insisted, after being ordered shackled, to be handcuffed

---

5. In contrast, the trial court in *Maggio* had made specific findings of fact that justified its refusal to hold a competency hearing. *See Maggio*, 462 U.S. at 113–15, 103 S.Ct. 2261.

as well; and continually disrupted the trial until he was removed from the courtroom and locked up. Although "bizarre actions" are not necessarily sufficient evidence to compel a *Pate* hearing, they are a factor to be considered. *See Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir.1991).

In the face of this evidence, and under the *Pate* standard for triggering a competency hearing, the modest evidence of Torres's competence does not fairly support the trial court's conclusion that no hearing was required. Dr. Wells' previous conclusion that Torres was competent to stand trial does not obviate the need for a hearing. *See Chavez v. United States,* 656 F.2d 512, 518 (9th Cir.1981). Nor does the evidence that Torres was able to assist his attorney at trial in minor ways.

 We decline to rely on the finding by the California Court of Appeal that no hearing was required; that too was unreasonable. *See Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (factual findings of state trial and appellate courts entitled to presumption of correctness under § 2254(d) (superseded)); *Abrams v. Barnett,* 121 F.3d 1036, 1038 (7th Cir.1997) (findings of state appellate court entitled to presumption of correctness under AEDPA § 2254(e)(1)). The appeals court found that "[n]o showing was made that at a certain point [Torres] became unable to assist defense counsel in the conduct of his defense in a rational manner—if he chose to do so." There is no record evidence for this conclusion, other than the trial judge's similarly unreasonable conclusion that Torres was "no different from any other defendant who is dissatisfied with his attorney." The district court properly concluded that this finding was unsupported by evidence in the record.

In sum, the state courts' findings that there was no bona fide doubt justifying a competency hearing under *Pate* were "un-

reasonable" within the meaning of 28 U.S.C. § 2254(d)(2).[6] Upon considering all of the evidence before the state courts, we conclude that the evidence that Torres's paranoid delusion that he was the victim of a medical conspiracy had expanded to include his counsel and the court raised a bona fide doubt that he was no longer able to " 'consult with his lawyer with a reasonable degree of rational understanding.' " *Dusky,* 362 U.S. at 402, 80 S.Ct. 788; *Chavez,* 656 F.2d at 518.

 Finally, we reject the State's contention that granting Torres's relief would violate the proscription in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) against the retroactive application of a new rule of criminal procedure. The test for a new rule is objective. *See Williams,* 120 S.Ct. at 1522. The district court relied on established Supreme Court precedent, *Pate* and *Drope,* in granting relief. The application of the *Pate* standard to the facts of Torres's case does not represent the application of the rule in *Pate* to a novel setting. *See Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). In contrast, the district court merely applied the rule in *Pate* to a new set of facts. *See Wright v. West,* 505 U.S. 277, 308, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring) ("If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule.").

## CONCLUSION

Upon review of the full record, we conclude that the state trial and appellate courts unreasonably determined that Damacio Torres was not entitled to a competency hearing under *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815

---

6. In deciding, as we have, that the state courts' factual determinations were unreasonable within the meaning of § 2254(d)(2), we have decided, of necessity, that on the existing record Torres has rebutted the "presumption of correctness" of those findings "by clear and convincing evidence." *See* § 2254(e)(1).

(1966). The district court properly granted Torres relief on his claim.[7] The judgment of the district court is

**AFFIRMED**.

---

7. The district court ordered that Torres be released unless the State elected to retry him, because it concluded that a retroactive hearing on Torres's competence would not protect his due process rights. *See Pate,* 383 U.S. at 387, 86 S.Ct. 836; *Moran v. Godinez,* 57 F.3d 690, 697 (9th Cir.1994) (amended opinion). The State does not contest this conclusion.