**Donald WARREN, Petitioner— Appellant,**

v.

**Dora B. SCHRIRO;\* Arizona Attorney General, Respondents—Appellees.**

No. 05–15122.

D.C. No. CV–02–00823–NVW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2005.

Decided Jan. 10, 2006.

---

\* Dora B. Schriro is substituted for her predecessor, Terry L. Stewart, as Director of the Arizona Department of Corrections. Fed. R.App. P. 43(c)(2).

Lori L. Voepel, Kimerer & Derrick, PC, Phoenix, AZ, for Petitioner–Appellant.

Katia Mehu, AGAZ–Office of the Arizona Attorney General (Phoenix), Phoenix, AZ, for Respondent–Appellee.

Before B. FLETCHER, THOMPSON, and BEA, Circuit Judges.

MEMORANDUM**

Petitioner–Appellant Donald Warren appeals the district court's denial of his petition for writ of habeas corpus under 28

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

We review de novo the district court's decision to deny Warren's habeas petition. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004). Because the parties are familiar with the case's facts, we do not recount them except as necessary to our disposition.

Because Warren failed to file his petition in the district court within the one-year period allowed under the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, the state urges us to dismiss Warren's petition as untimely. Warren counters that the state waived its statute of limitations defense and that, in any event, he is entitled to equitable tolling. Because AEDPA's statute of limitations is not jurisdictional, *see Green v. White,* 223 F.3d 1001, 1003–04 (9th Cir.2000), we elect to deny Warren's petition on the merits rather than reach the waiver and equitable tolling issues.

Warren's first substantive claim is that the trial court violated due process by accepting his no contest plea and sentencing him without *sua sponte* conducting a competency hearing or making an express finding of competency.[1] The state post-conviction court rejected this claim, a decision we review to determine whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

The evidence before the state trial court was insufficient to create a good faith doubt as to Warren's competency. Although the court knew that Warren was taking antipsychotic medication and medication for anxiety that could theoretically have affected his thought processing, it heard testimony from Warren's treating psychiatrist that Warren had "been on these medications for a long, long time" without any apparent "negative effect on his ability to reason." The trial court also had before it the opinions of four medical experts who had examined Warren after defense counsel noticed a possible insanity offense, not one of whom questioned Warren's competency. Indeed, one of these four experts expressly stated that Warren was competent to stand trial or enter a plea agreement. Similarly, Warren's treating psychiatrist testified at the change-of-plea hearing that he had no reason to doubt Warren was "competent to enter into a plea agreement, to waive his constitutional rights and all that that entails and to knowingly, intelligently and voluntarily enter into a plea agreement." This psychiatrist also testified that he believed Warren understood the "nature of the charges against him" and the judicial "process—the role of the attorney, the Judge, the prosecutor and the jury." Finally, although Warren on two occasions expressed momentary confusion in response to questions from the trial court, the record does not support the dissent's characterization that he was "befuddled." On both occasions, Warren successfully resolved his uncertainty by conferring with counsel—a fact that, far from compelling good faith doubt as to Warren's competency, manifested an ability effectively to communicate with counsel. *See Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)

1. Warren also challenges the state post-conviction court's retroactive finding of competency and its fact-finding process. These claims, however, are based upon an alleged violation of state law and are not cognizable in federal habeas proceedings. *See Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir.1989) (per curiam).

(explaining that competence implies a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"). Thus, the trial court did not violate due process by failing *sua sponte* to conduct a competency hearing or make an express competency finding. *See Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Warren also raises two sets of ineffective assistance of counsel claims. He contends trial counsel was ineffective for failing to request a competency hearing and for advising him to plead no contest, instead of proceeding to trial with an insanity defense. He also claims post-conviction appellate counsel were ineffective during his first round of state post-conviction proceedings for failing to raise an ineffective assistance of trial counsel claim or to withdraw to enable new, independent counsel to raise the alleged insufficiency of trial counsel.[2] These claims were raised and rejected in a second state post-conviction proceeding.

We conclude that the state post-conviction court's rejection of the claims of ineffective assistance of trial and post-conviction appellate counsel was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law;" nor was the rejection "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(1) & (2).

With regard to trial counsel, after investigating and considering an insanity defense, he made a reasonable tactical decision to advise Warren to plead no contest to the charges specified in the plea agreement. As noted above, four medical experts examined Warren with regard to his possible insanity defense. Two of them did not render an opinion as to Warren's sanity, one way or the other, at the time of the criminal acts. One of the experts opined Warren was legally sane at the time of those acts and was also competent to stand trial or enter a plea agreement at the time of the expert's examination. The fourth expert, without questioning Warren's present competency, opined Warren was legally insane at the time of the charged criminal acts. Based on this evidence, trial counsel determined it would be too great a risk to go to trial on an insanity defense, recommending instead that Warren enter the settlement agreement and plead no contest.

Trial counsel thereafter concentrated on attempting to obtain a court order for Warren's psychiatric treatment, in view of Warren's mental disability due to post-traumatic stress disorder. Trial counsel had represented the defendant for over eighteen months and had never questioned his present competency. As noted above in the discussion of whether the trial court should have ordered a competency hearing *sua sponte,* the testimony of Warren's treating psychiatrist, the failure of any of the other four medical experts to question Warren's competency, the express opinion of one expert that Warren was competent, and Warren's evident ability to communicate with counsel gave little reason to

2. Although there is no Sixth Amendment right to effective assistance of post-conviction counsel, *Moormann v. Schriro,* 426 F.3d 1044, 1058 (9th Cir.2005), there is such a right with respect to counsel on the first appeal as of right, *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Under Arizona law, by pleading no contest Warren forfeited his right to direct appeal. Ariz.Rev. Stat. § 13–4033(B). Consequently, his first round of post-conviction proceedings was his first appeal as of right, and he may challenge the effectiveness of his post-conviction counsel. *See State v. Pruett,* 185 Ariz. 128, 912 P.2d 1357, 1359–60 (1995).

doubt Warren's competency.[3] In view of such evidence, it was not ineffective assistance of counsel to forgo an insanity defense and advise Warren to enter the plea agreement and plead no contest without first requesting a competency hearing. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

Warren's sentencing hearing was held thirty-five days after his change-of-plea hearing. Although he was confined in jail during that time and had attempted suicide, there was no evidence of any change in his overall mental condition to warrant calling for a competency hearing.

Nor was there any showing of ineffective assistance of post-conviction appellate counsel sufficient to warrant habeas relief. In the first state post-conviction proceeding, counsel did not assert any claim of ineffectiveness of trial counsel. Those claims, however, were asserted, argued, and resolved in the second state post-conviction proceeding. Thus, all claims of ineffective assistance of trial and post-conviction appellate counsel were addressed and considered in the post-conviction state court proceedings. Moreover, because Warren's trial counsel was not ineffective, there was no prejudice by any failure of post-conviction appellate counsel to have raised the omitted claims of ineffectiveness of trial counsel in the first state post-conviction proceeding.[4]

**AFFIRMED.**

B. FLETCHER, Senior Circuit Judge, dissenting.

I respectfully dissent.

The petitioner, Donald Warren, caused a traffic accident that claimed the lives of three people and disabled another. Mr. Warren, a Vietnam veteran who suffers from post-traumatic stress disorder, had been drinking heavily on the night of the accident. He pled guilty to three counts of manslaughter and one count of aggravated assault. The state court judge sentenced him to thirty-six years in prison.

At the time of the change of plea and sentencing hearings, there were obvious

3. The dissent emphasizes that trial counsel had two pieces of information potentially relevant to competency that the trail court lacked. First, according to the memorandum of points and authorities in support of Warren's motion for state post-conviction relief, counsel knew that the majority of his discussions regarding the plea agreement had been with Warren's wife. Second, according to affidavits from Warren's wife, counsel learned after the change-of-plea hearing that, at the close of this hearing, Warren had commented, "What was that all about?"

Even assuming the truth of such information—which is not at all clear from the record—the dissent exaggerates its import. Warren was present for all of counsel's discussions regarding the plea agreement, and the possibility that his wife was a more active participant in these discussions than he does not imply he could not understand the discussions or effectively communicate with counsel. Additionally, Warren's purported statement, "What was that all about?" is too ambiguous to demonstrate that he did not understand the change-of-plea proceedings. In colloquial English, such a statement could have been a dismissive, pejorative reference to the proceedings as easily as an expression of confusion. Thus, in light of the record as a whole, any evidence of incompetency available to trial counsel and unavailable to the trial court was insufficient to compel good faith doubt as to Warren's competency.

4. We note that a showing of prejudice is necessary in Warren's case because *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), does not apply on collateral review except to cases in which counsel concurrently represented multiple clients. *See Earp v. Ornoski,* 431 F.3d 1158, 1182–185 (9th Cir.2005).

signals that should have prompted an inquiry into Mr. Warren's competency. To begin, the petitioner's medical records reveal a panoply of psychiatric problems. Mr. Warren had suffered for decades from a "severe case of post-traumatic stress disorder" as a result of his military service in Vietnam; according to the Veteran's Administration, this affliction rendered Mr. Warren "permanently disabled." Following his arrest, Mr. Warren suffered from auditory hallucinations and expressed suicidal thoughts. While incarcerated, he was placed on a suicide watch, and was subjected by prison authorities to "four-point" treatment in which a patient's limbs are all pinned in order to prevent the patient from harming himself or others. The petitioner's doctors described him as suffering from "feelings of persecution," as having "paranoid traits," and as demonstrating "schizoid features." One of these doctors opined that Mr. Warren was insane at the time of the accident.

Likewise, the state's doctors concluded that Mr. Warren suffered from "extreme psychosocial stress," observed that he may have had organic brain damage, and found that he was dependent on numerous substances, including alcohol, to ameliorate depression and psychosis. These doctors diagnosed Mr. Warren with "mixed personality disorder with schizoid, antisocial, dependent, and passive-aggressive characteristics." One of the state's doctors—who has since had his medical license revoked—opined that Mr. Warren was both sane at the time of the accident and competent to stand trial, but this evaluation took place nearly a year prior to Mr. Warren's decision to plead guilty. Indeed, at the sentencing hearing the government's psychiatrists specifically indicated that they had *not* looked at the issue of competency and had not "asked the detailed questions" that would have been necessary for a competency determination. When he entered his guilty plea, Mr. Warren was taking four psychotropic medications—two for depression, one for anxiety, and one for hallucinations. The medical records indicate that some of these medications had the potential to affect Mr. Warren's cognitive abilities.

In addition to these medical materials, which obviously raise the specter of incompetence, there is ample evidence to confirm that Mr. Warren actually had difficulty appreciating the nature of his decision to plead guilty. Mr. Warren's trial attorney indicated that most of his ostensible consultations with Mr. Warren were in fact consultations with Mrs. Warren, the petitioner's wife, since Mr. Warren was frequently unable to comprehend the nature of the legal proceedings or appreciate the legal advice given to him. Further, Mr. Warren's confusion was apparent at the change of plea hearing. When asked whether he intended to plead guilty, Mr. Warren responded, "I think so." When asked whether he understood the plea agreement, Mr. Warren responded, "I'm a little confused." Only after consulting with his lawyer in the middle of the hearing did he answer both questions affirmatively. Then, at the conclusion of the hearing, Mr. Warren asked his wife, "What was that all about?"—a comment that, according to Mrs. Warren, she later relayed to defense counsel.[1]

1. The majority argues that Mr. Warren "successfully resolved his uncertainty" at the change of plea hearing by "conferring with counsel." There is, of course, no record of Mr. Warren's conversation with counsel, and the only indication that his confusion was "successfully resolved" is the fact that Mr. Warren did an immediate about-face and indicated that he both understood the plea agreement and intended to enter into it. The record, however, belies any purported successful resolution, for Mr. Warren asked his wife immediately following the hearing what the hearing was "all about." The majority

In my view, these facts entitle Mr. Warren to habeas relief on two grounds. First, there was a violation of Mr. Warren's right to due process under the Fourteenth Amendment because the trial court judge failed to conduct a competency hearing *sua sponte*. In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court held that a trial court must conduct a competency hearing if there is a "bona fide doubt" about the competency of the defendant to stand trial or enter a guilty plea. *Id.* at 385, 86 S.Ct. 836. The majority loses sight of the proper inquiry here, which "is *not* whether he was competent, but whether he was entitled to a hearing to determine his competence." *Torres v. Prunty*, 223 F.3d 1103, 1106 (9th Cir.2000) (emphasis added). Mr. Warren was entitled to a hearing if there was *doubt* about whether he had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). In my view, it was unreasonable for the trial court to proceed with the change of plea hearing, given that the heavily medicated defendant had a history of psychiatric problems and obviously had been befuddled by straightforward questions about whether he understood and intended to enter the plea.

Second, there was a violation of Mr. Warren's right to effective assistance of counsel under the Sixth Amendment because Mr. Warren's attorney failed to request a competency hearing. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that a criminal defendant is denied his Sixth Amendment right to counsel if his attorney's performance falls below "an objective standard of reasonableness" and "prejudices" the defendant. *Id.* at 689, 692, 104 S.Ct. 2052. Here, defense counsel provided constitutionally deficient assistance when he neglected to request a competency hearing, given that he had previously provided notice of an insanity defense on behalf of his client, had been forced to communicate with his client's wife because of the client's psychological problems, had obtained a plethora of evidence calling into question his client's mental health, and had learned from Mrs. Warren that her husband had not understood the nature of the change of plea hearing.

The majority observes that trial counsel initially pursued an insanity defense and then "concentrated on attempting to obtain a court order for Warren's psychiatric treatment, in view of Warren's mental disability due to post-traumatic stress disorder." Apparently, the majority considers this trial strategy deserving of deference under *Strickland.* I do not. While the abandoned insanity defense related to Mr. Warren's capacity at the time of the accident to understand right from wrong, it has little bearing on his capacity to confer with his attorney or to understand the consequences of his plea. The question of competency involves a determination about whether the defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of rational under-

ignores this evidence by questioning its veracity and suggesting that Mr. Warren's statement "could have been a dismissive, pejorative reference to the proceedings." In doing so, the majority distorts the record by taking Mr. Warren's statement out of context and giving it an unnatural reading. Viewed in light of Mr. Warren's regimen of psychotropic drugs, his suicide attempts, and his evident confusion during the hearing, it is not credible for the majority to claim that Mr. Warren's statement was anything other than an expression of bewilderment.

standing ... [and] a rational as well as factual understanding of the proceedings against him." *Torres*, 223 F.3d at 1106 (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). In my view, the fact that the attorney noticed an insanity defense and then pursued psychiatric treatment for his client is yet more proof that he should have had his client's competency examined, not an indication of sound legal strategy. Given all of the red flags raised in this case—Mr. Warren's treatment with psychiatric drugs, his suicidal episodes during incarceration, his expressed confusion at the plea hearing, and the attorney's consultations with Mr. Warren's wife—it was incumbent upon Mr. Warren's attorney to investigate his client's competency.

On this record, I find astonishing the majority's assertion that "it was not ineffective assistance of counsel to ... advise Warren to enter the plea agreement and plead no contest without first requesting a competency hearing." Nor can I concur with the majority's statement that "[t]he evidence before the state trial court was insufficient to create a good faith doubt as to Warren's competency." Here, both the defense attorney and the trial court moved ahead with criminal proceedings against a defendant who was at the very least psychologically infirm and was perhaps unable to appreciate at all the consequences of his decision to enter a guilty plea. The majority's incantation of the AEDPA standard of review is also unpersuasive, as the proceedings against Mr. Warren were clearly "contrary to, or ... an unreasonable appli-

cation of" the Supreme Court's long-established rulings in *Pate* and *Strickland.* 28 U.S.C. § 2254(d).

In my view, Mr. Warren has set forth two claims that each independently entitle him to habeas relief.[2] I therefore dissent.

---

**2.** The only other obstacle to Mr. Warren's habeas petition is the fact that he missed the one-year filing deadline under AEDPA. *See* 28 U.S.C. § 2244(d)(1). The majority avoids the question of whether equitable tolling is appropriate in this case. I would reach the question and resolve it in petitioner's favor, as the district court did, because of the unique difficulties of dealing with the petitioner's

mental incapacity in the course of preparing the habeas petition. *See Stillman v. LaMarque*, 319 F.3d 1199, 1202–03 (9th Cir.2003); *Green v. White*, 223 F.3d 1001, 1003–04 (9th Cir.2000) *Calderon v. U.S. Dist. Ct. (Kelly)*, 163 F.3d 530, 541 (9th Cir.1998) (en banc); *Calderon v. U.S. Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir.1997).