**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CLIFTON MAXWELL,
　　　　　*Petitioner-Appellant,*

v.

ERNIE ROE, Warden California
State Prison, Los Angeles County,
　　　　　*Respondent-Appellee.*

No. 08-55534

D.C. No.
5:01-cv-00131-
SGL-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
December 10, 2009—Pasadena, California

Filed May 20, 2010

Before: Harry Pregerson, John T. Noonan and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

7207

## COUNSEL

Patrick Morgan Ford, San Diego, California, for plaintiff-appellant Clifton Wayne Maxwell.

Edmund G. Brown, Jr., Attorney General of California, Gary W. Schons, Senior Assistant Attorney General, Kevin Vienna, Supervising Deputy Attorney General, and Rhonda Cartwright-Ladendorf, Supervising Deputy Attorney General, San Diego, California, for respondent-appellee Ernie Roe, Warden.

## OPINION

PAEZ, Circuit Judge:

A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial. This right not only assures that a defendant has the present ability to consult with counsel, to understand the nature and object of the proceedings against him, and to aid in the preparation of his defense, *Dusky v. United States*, 362 U.S. 402,

402 (1960), it is "fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U.S. 162, 172 (1975).

Here, Clifton Wayne Maxwell appeals from the district court's judgment denying his petition for a writ of habeas corpus. Maxwell argues that at the time of his January 1998 state court trial for first degree murder he was incompetent to stand trial and that the state court denied him due process in failing to hold, *sua sponte*, a competency hearing. At the time of trial, Maxwell had a history of mental illness, frequently refused to take his prescribed antipsychotic medications, was unable to verbally or physically control himself in the courtroom, and exhibited increasingly paranoid and psychotic behavior that impaired his communication with defense counsel and reasoning regarding his defense. Furthermore, during the trial, Maxwell attempted suicide and spent a substantial portion of the trial involuntarily committed to a hospital psychiatric ward. Despite these circumstances, the trial judge never doubted Maxwell's competence.

Because we conclude that the state appellate court's decision to affirm the trial court's finding that Maxwell was not entitled to a hearing on his competence was based on an unreasonable determination of the facts in light of the evidence known by the trial judge at the time of trial and an unreasonable application of federal law as established by *Drope*, and *Pate v. Robinson*, 383 U.S. 375 (1966), we reverse and remand.[1]

## I.   Factual and Procedural History

On December 27, 1994, Maxwell discovered his car had been stolen from his stepfather's garage. Several days later, Maxwell and four other men drove to the home of Jerry Jefferson, the person who they believed stole Maxwell's car. Although Maxwell was unarmed, three of the other four men

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 2253.

were armed. After the missing car was found in Jefferson's garage, two of the armed men approached the house, fired shots, and killed Jefferson.

In July 1995, Maxwell and the two shooters were charged in Riverside County Superior Court with first degree murder. The three defendants were tried before two separate juries: one for Maxwell and one for the other two co-defendants. As pretrial proceedings progressed, Maxwell's defense counsel expressed doubt about Maxwell's competence to stand trial. The trial court suspended criminal proceedings pursuant to California Penal Code section 1368 and ordered a competence determination. Between June and October 1996, five psychiatrists evaluated Maxwell. Four of the five opined that Maxwell was feigning or at least grossly embellishing a psychosis and that he was competent to stand trial. The fifth doctor filed a report in which he concluded that Maxwell was incompetent to stand trial. In December 1996, after considering the psychiatrists' reports and opinions, Judge Christian F. Thierback of the Riverside County Superior Court found Maxwell competent to stand trial and reinstated criminal proceedings.

In January 1998, Maxwell's case was assigned to Judge Patrick F. Magers for trial. As we explain in greater detail below, during his trial, Maxwell's behavior in and outside the courtroom was erratic, irrational, and disruptive. Indeed, before the jury ever entered the courtroom, Judge Magers found Maxwell posed a danger to court staff and defense counsel and had Maxwell removed. During trial, Maxwell's counsel repeatedly alerted the court that Maxwell's condition was worsening and that communication with Maxwell was severely strained. The trial judge reviewed the 1996 psychiatric competency evaluations and concluded that any sign that Maxwell was mentally impaired was feigned. Approximately half-way through the trial, Maxwell attempted suicide with a razor blade and was sent to Riverside General Hospital for a 72-hour psychiatric hold. The court concluded that the suicide attempt was feigned and accordingly found that Maxwell's

absence was voluntary. After two psychiatrists evaluated Maxwell, his initial 72-hour psychiatric hold was extended to a 14-day involuntary psychiatric hold. Nevertheless, the trial proceeded. After a ten-day trial that spanned the month of January, a jury that never saw Maxwell convicted him of first degree murder. One of Maxwell's co-defendants was acquitted and the other was convicted of second degree murder. The court sentenced Maxwell to prison for twenty-five years to life.

Maxwell appealed. While his appeal was pending, Maxwell also petitioned the state court of appeal for a writ of habeas corpus. In October 1999, in an unpublished opinion, the California Court of Appeal affirmed Maxwell's conviction and denied his petition for a writ of habeas corpus. The California Supreme Court denied Maxwell's petition for review without comment. Thereafter, on two separate occasions, Maxwell petitioned the state supreme court for habeas relief. Both times the court denied his habeas petition without comment.

In February 2001, Maxwell filed a timely petition for a writ of habeas corpus in federal district court. The assigned magistrate judge prepared a Report and Recommendation recommending that the petition be denied and dismissed with prejudice. The report found that despite Maxwell's "certainly disruptive and allegedly suicidal behavior, [and] extensive pharmacopeia of prescribed antipsychotic medication," the evidence was "insufficient to raise a bona fide doubt that [Maxwell], previously diagnosed as competent and malingering, had become truly incompetent;" and therefore, "the state courts . . . neither acted in a manner contrary to federal law as determined by the Supreme Court nor unreasonably applied that law." In November 2001, the district court adopted the magistrate judge's findings and conclusions and denied Maxwell's petition. Maxwell appealed, arguing that he was incompetent to stand trial and that the trial court's failure to conduct a competency hearing when presented with substantial evidence of incompetence violated his due process rights.

In *Maxwell v. Roe*, 113 Fed. Appx. 213 (9th Cir. 2004), we reviewed the district court's November 2001 judgment. There, we noted that

> Maxwell's behavior was erratic whether he was in court or in jail. He was unable to control himself in pretrial proceedings and was involuntarily committed several times while in jail awaiting trial, and once during trial. Because he repeatedly waived his right to be present at trial, the jury that convicted Maxwell never actually saw him.

*Maxwell*, 113 Fed. Appx. at 216. We further noted that "Maxwell's sustained erratic behavior, in light of the long interval between his competency evaluations and his trial" presented a relatively "compelling argument for incompetency . . . ." *Id.* However, because it was not clear from the record what facts relating to Maxwell's competence were known by the state trial court at the time of Maxwell's January 1998 murder trial, we reversed and remanded the case to the district court for an evidentiary hearing. *Id.* We explained:

> [W]e are not making a substantive determination on Maxwell's petition because it is unclear what evidence was properly before the state court and the consequent responsibility of the trial court in making the determination of Maxwell's competence to stand trial. . . . In light of the trial court's continuing responsibility to ensure that a defendant is not tried while incompetent, we are concerned about the following facts. First, . . . Maxwell was determined numerous times to be "gravely disabled" or a danger to himself or others as a result of mental disorder. Second, Maxwell's behavior at trial was erratic and strange. And, third, during the course of trial Maxwell was involuntarily hospitalized for attempted suicide. . . . Since we do not know how much of this evidence was available to the trial court at the time

of Maxwell's trial, we remand to the district court to hold an evidentiary hearing to consider the reasonableness of the trial court's determination that Maxwell was competent to stand trial.

*Id.* at 215-16 (footnotes omitted). On remand, the assigned magistrate judge conducted an evidentiary hearing to determine what evidence was properly before the state trial court at the time of the January 1998 trial. Although the hearing revealed additional information of Maxwell's incompetence that the trial judge knew at the time of trial, the magistrate judge's report again recommended denying Maxwell habeas relief. The magistrate judge acknowledged "the dangers— pointed out by the Ninth Circuit—of a judge reflexively relying on a prior, possibly stale determination that a criminal defendant was competent and malingering." However, after weighing the evidence tending to support the trial court's decision against the evidence not supporting the court's decision, the magistrate judge concluded that "the additional evidence [deduced during the hearing] . . . still would have permitted the judge reasonably, if perhaps incorrectly, to have concluded that no bona fide doubt existed as to [Maxwell's] competence to stand trial." The district court accepted the findings and recommendation of the magistrate judge and denied Maxwell's habeas petition. Maxwell timely appealed, and we reverse.

## II. Standard of Review

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009). The district court's findings of fact are reviewed for clear error. *McMurtrey v. Ryan*, 539 F.3d 1112, 1118 (9th Cir. 2008). Maxwell filed his federal habeas petition after April 24, 1996, and thus his petition is subject to the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, a writ of habeas corpus may be granted only if the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For purposes of § 2254(d)(1), clearly established federal law consists of the holdings of the Supreme Court at the time of the state court decision; however, "circuit court precedent may be 'persuasive' in determining what law is clearly established and whether a state court applied that law unreasonably." *Pinholster v. Ayers*, 590 F.3d 651, 662 (9th Cir. 2009) (en banc).

A state court's finding that the evidence before the trial court did not require a competency hearing under *Pate* is a finding of fact. *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam)). Where a petitioner challenges the state court's findings based entirely on the state record, "we must be particularly deferential to our state-court colleagues," and grant relief only if we are "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Miller-El v. Cockerell*, 537 U.S. 322, 324 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ."). As we have previously pointed out, "[t]his is a daunting standard—one that will be satisfied in relatively few cases;" however, "the standard is not impossible to meet." *Maddox*, 366 F.3d at 1000; *see, e.g., Torres*, 223 F.3d at 1105 (holding that the state court's finding that the evidence did not require a competency hearing was "unreasonable within the meaning of § 2254(d)(2), and that [petitioner] was entitled to a competency hearing under *Pate*").

Our review is of the state court's last reasoned decision. *Barker v. Fleming,* 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991)). Here, because the California Supreme Court denied direct review and Maxwell's subsequent habeas petitions without comment, we review the California Court of Appeal's unpublished opinion. *See Ylst*, 501 U.S. at 803.

## III.   Discussion

**[1]** Maxwell argues that at the time of his January 1998 trial he was not competent to stand trial. It is undisputed that "the conviction of an accused person while he is legally incompetent violates due process." *Pate*, 383 U.S. at 378. To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. Where the evidence before the trial court raises a "bona fide doubt" as to a defendant's competence to stand trial, the judge on his own motion must conduct a competency hearing. *Pate*, 383 U.S. at 385. This responsibility continues throughout trial, *Drope*, 420 U.S. at 181, and we apply the same bona fide doubt standard to determine whether an additional competency hearing was required. *See Amaya-Ruiz v. Stewart*, 121 F.3d 486, 489 (9th Cir. 1997). We have explained that under *Drope* and *Pate*, the test for such a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required," and "one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180 (paraphrasing *Pate*, 383 U.S. at 385).

Here, the trial court found and the state court of appeal affirmed that during the course of the trial, there was insufficient evidence to justify a second hearing regarding Maxwell's competence. We conclude, however, that in light of the evidence before the trial court at the time of the 1998 trial, the trial court's finding was an unreasonable determination of the facts and an unreasonable application of the Supreme Court's clearly established law in *Pate* and *Drope*.

**[2]** The heart of competency to stand trial is a defendant's "present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402. Here, Maxwell's uncontrolled and disruptive behavior in the courtroom and signs of irrationality and paranoia when it came to his own defense should have raised a doubt about his competency. *See Drope*, 420 U.S. at 180. In *Torres*, we explained that "defendant's unusual and self-defeating behavior in the courtroom" was a factor that "suggested that an inquiry into competence was required." 223 F.3d at 1109. As in *Torres*, Maxwell engaged in "peculiar behavior" and "continually disrupted the trial until he was removed from the courtroom and locked up." *Id*. at 1109-10.

Maxwell's lack of self control was apparent even before trial. During pretrial proceedings, Maxwell made noises and blurted out obscenities in the courtroom. Defense counsel advised the trial judge that Maxwell "has been, in my opinion, getting worse, or deteriorating . . . I know that he has been in the psychiatric unit . . . of the jail . . . . I am not sure he knows what I am saying . . . ." The trial judge replied that he had reviewed the medical reports submitted in connection with the prior competency hearing, that he found nothing that would warrant conducting a second competency hearing, and that he concluded that Maxwell was malingering. He stated that "[a] prior Court found the defendant to be competent, and that decision is binding on this Court and fully supported by the psychiatric and psychological reports lodged with this Court."

The trial judge then asked Sergeant Larry Jernegan whether he had any concerns regarding the security of the courtroom with Maxwell present. Sergent Jernegan informed the judge that Maxwell had undergone numerous psychiatric evaluations pursuant to California Welfare and Institutions Code section 5150[2], had been prescribed psychiatric medication which he refused to take, and had assaulted another inmate with a knife. Sergeant Jernegan concluded that Maxwell "either is unwilling or unable to conform to proper court behavior," and asked the trial court to order Maxwell to wear a Remote Electronically Activated Control Technology ("REACT") belt. The trial court agreed that Maxwell "obviously, has been displaying disruptive behavior and he is having a difficulty conforming himself," and ordered that the REACT belt be placed on Maxwell at the discretion of the Sheriff's Department.

---

[2]California Welfare and Institutions Code section 5150 states:

When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

Such facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled. If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, such person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false.

Following this colloquy, Maxwell had another physical and verbal outburst. The courtroom deputies, with the assistance of Maxwell's own counsel, had to physically restrain Maxwell and forcibly put him in his seat. At that point, the trial judge found that Maxwell "represents a threat to the staff and possibly to [defense counsel] as well" and ordered that Maxwell be removed from the courtroom. The trial judge found that Maxwell was malingering and therefore that Maxwell had voluntarily absented himself from the trial. Because Maxwell's absence was due to voluntary disruptive behavior, under California Penal Code section 1043, the trial judge determined he could continue the trial without Maxwell present. *See* Cal. Penal Code § 1043.[3]

On January 8, 1998, Maxwell's trial commenced without him. Over the course of the next few days of trial, Maxwell's counsel advised the court of Maxwell's increasingly irrational and paranoid behavior. Specifically, defense counsel informed the court that Maxwell had requested that his attorney turn over evidence that would be helpful to the prosecution, asked that his counsel be fired, and continued to refuse to attend or even listen to the trial proceedings.

**[3]** In *Torres*, we held that the defendant was entitled to a competency hearing where he requested that his attorney be

---

[3]California Penal Code section 1043 states in relevant part:

(a) Except as otherwise provided in this section, the defendant in a felony case shall be personally present at the trial.

(b) The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases:

(1) Any case in which the defendant, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that the trial cannot be carried on with him in the courtroom.

fired, threatened to assault his attorney, insisted on being shackled, and continually disrupted the trial until he was removed. 223 F.3d at 1109-10 (explaining that Torres was "no longer [ ] able to assist rationally in his defense"); *see also Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003) (holding that an evidentiary hearing on competency was required where defendant was not able to make logical judgments about his defense). Like the defendant in *Torres*, Maxwell's behavior throughout his murder trial was unreasonable and self-defeating. Maxwell's communication with his attorney was so strained that his counsel stated he was unable to develop a theory of the case or make an opening statement.

**[4]** In addition to Maxwell's conduct in the courtroom, the trial judge was aware of Maxwell's mental health history and contemporaneous behavior outside of the courtroom. This additional information would have raised a bona fide doubt in the mind of a reasonable trial judge about whether Maxwell was competent to stand trial. Maxwell was on antipsychotic drugs at the time of his trial and had a known history of mental illness. The panoply of drugs he was administered during trial, and his reported failure to take them "alone should have raised concerns." *McMurtrey*, 539 F.3d at 1125 (holding that evidence of defendant's behavior, medications, and memory problems was sufficient to raise a reasonable doubt as to defendant's competence). Furthermore, during the trial, Maxwell attempted to kill himself. We recognize that "[not] every suicide attempt inevitably creates a doubt concerning the defendant's competency." *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1319 (9th Cir. 1997). Here, as in *Drope*, however, the suicide attempt occurred in the midst of trial and "did not stand alone." *Drope*, 420 U.S. at 180 (internal quotation marks omitted); *see id.* at 181 (holding that "in light of the defendant's behavior including his suicide attempt" a competency hearing was required). Maxwell's attempted suicide—taken in the context of his pre-trial behavior, strained communication with defense counsel, mental health history, antipsychotic medications, and subsequent psy-

chiatric detentions—would have raised a doubt in a reasonable judge. *Id.*; *see also Loyola-Dominguez*, 125 F.3d at 1319 (holding that a competency hearing was required when defendant attempted suicide on the eve of trial); *Moran v. Godinez*, 57 F.3d 690, 695 (9th Cir. 1994) (holding that an attempted suicide three months before trial was a significant factor warranting a competency hearing).

On January 12, 1998, in conjunction with Maxwell's suicide attempt, officers from the jail admitted Maxwell to the Riverside General Hospital psychiatric ward pursuant to their authority under California Penal Code section 4011.6 for an involuntary 72-hour hold pursuant to California Welfare and Institutions Code section 5150. Without taking testimony or reviewing Maxwell's medical records, the trial judge opined that Maxwell's "conduct in jail, which caused the jail deputies to take him to Riverside General Hospital, if that is where he is at, I believe that [i.e., Maxwell's suicide attempt] was a voluntary choice he made," and accordingly stated that he was "not entertaining a doubt as to his competency at this time."

Maxwell, like the defendant in *Drope* who also attempted suicide, was therefore "absent for a crucial portion of his trial." 420 U.S. at 180. In *Drope*, the Supreme Court explained that:

> Petitioner's absence bears on the [competency] analysis in two ways: first, it was due to an act which suggests a rather substantial degree of mental instability contemporaneous with the trial; second, as a result of petitioner's absence the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him.

*Id.* at 181 (internal citation omitted). Here, Maxwell was absent from his trial for a substantial amount of time. After a medical evaluation conducted at Riverside General Hospital, the medical staff extended Maxwell's 72-hour psychiatric hold to a 14-day psychiatric hold pursuant to California Welfare and Institutions Code section 5250.[4]

[5]  A section 5150 hold may be extended to a section 5250 hold, i.e. a 14-day hold, in the extreme instance where "[t]he professional staff of the facility providing evaluation services has found the person is, as a result of mental disorder . . . a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250. The stated purpose of a section 5250 14-day psychiatric hold is to certify the inmate for "intensive treatment related to the mental disorder." *Id.* The psychiatric physicians who evaluated Maxwell pursuant to the

---

[4]California Welfare and Institutions Code section 5250 states in relevant part:

>    If a person is detained for 72 hours under the provisions of Article 1 (commencing with Section 5150), or under court order for evaluation pursuant to Article 2 (commencing with Section 5200) or Article 3 (commencing with Section 5225) and has received an evaluation, he or she may be certified for not more than 14 days of intensive treatment related to the mental disorder or impairment by chronic alcoholism, under the following conditions:

>    (a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has found the person is, as a result of mental disorder or impairment by chronic alcoholism, a danger to others, or to himself or herself, or gravely disabled.

>    (b) The facility providing intensive treatment is designated by the county to provide intensive treatment, and agrees to admit the person

>    . . . .

>    (c) The person has been advised of the need for, but has not been willing or able to accept, treatment on a voluntary basis. . . .

section 5250 hold reported that he was both "a danger to himself" and "gravely disabled." Although it is not clear whether the trial judge had copies of the psychiatric reports and evaluations that the doctors prepared, he was fully aware of the 72-hour and 14-day psychiatric holds.

During the time that Maxwell was "gravely disabled" and committed to Riverside General Hospital's psychiatric ward on the involuntary 14-day psychiatric hold, his murder trial proceeded without him with respect to all defendants and both juries. In total, Maxwell was involuntarily committed to Riverside General Hospital's psychiatric ward for eight days, five of which were during the trial. Over the course of January 12, 13, 14, 15 and 20, the prosecution called fifteen witnesses and presented eyewitness testimony that related directly to Maxwell during his absence. On January 20, 1998, as trial continued, defense counsel advised the trial court that:

> [Maxwell] is still at Riverside County hospital. I was able to speak to him, although he doesn't communicate very well . . . . Apparently what it looks like is he has been certified for a 14-day hold following a 5150, initial 48-hour detention . . . . I think where this leaves us is that if I understand that process, two doctors apparently now have interviewed him and reviewed this matter and apparently have come to this decision that he needs this, this next step of a 14-day hold is appropriate. He is still at the hospital in the jail section, and I don't know what to tell the court except this suggests—but maybe the court would like to inquire or ask or order that the doctors who have seen him prepare a report to the Court so that the Court can see in greater detail what their opinions are relating to Mr. Maxwell.

The following day, according to an entry in the record of his doctor's orders, Maxwell was "cleared to go to court."[5] And,

_____

[5]There is some ambiguity as to when exactly Maxwell was cleared by the hospital to return to court. On January 20, 1998, the trial court stated

on January 21, 1998, Maxwell returned to the courtroom. At that time, the court again asked Maxwell if he was willing to behave and conform his behavior to what would be expected in the courtroom and Maxwell replied he would not. As a result, he was once again removed from the courtroom.

**[6]** The initial section 5150 hold, standing alone, put the court on notice that a qualified professional had certified that there was "probable cause to believe" that Maxwell was "as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150. The section 5250 hold put the court on notice that medical professionals had determined that Maxwell in fact had such a mental disorder that made him "a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a). Here, as in *Drope*, "in light of the evidence of petitioner's behavior including his suicide attempt, and there being no opportunity without his presence to evaluate that bearing in fact, the correct course was to suspend the trial until such an evaluation could be made." 420 U.S. at 181. No reasonable judge, situated as the state trial judge was here, could have proceeded with the trial without doubting Maxwell's competency to stand trial.

**[7]** Had the judge conducted a hearing at this point, he would have discovered further information suggesting Maxwell's incompetence. For example, had the judge simply obtained copies of the January 15, 1998, "Notice of Certification," prepared in conjunction with the section 5250 hold, he

_____

that Maxwell had "been free to come to court for the last week," but the only evidence in the record pertaining to Maxwell's release date is a doctor's note clearing Maxwell for court on the day he first returned, January 21, 1998. Regardless of when the hospital cleared Maxwell to return to court, the fact that Maxwell subsequently was cleared for court does not obviate the trial court's obligation to conduct a competency determination and comply with *Pate* and *Drope* following his successive psychiatric holds.

would have learned that, at the time of trial, two separate state psychologists had found Maxwell to be "actively psychotic" and that one had reported that:

> Patient [Maxwell] is in a safety cell on suicide watch. Patient has a long history of mental illness. Presently confused, disoriented, talking to himself, agitated, unpredictable and impulsive. He was found with a razor blade and a superficial laceration on his left wrist, and has smeared blood. Patient is actively hallucinating. He refused to communicate, paranoid and suspicious. In safety cell he lies naked and on the floor. Agitated and unpredictable with poor eye contact. He refused medication and refused to eat. He has suicidal intentions, and says "I will find a way."

The second psychologist similarly reported that:

> [Maxwell] is unable to function at this time because of his poor mental state and [he] is at this time unable to provide care for himself because of his acute psychotic symptoms . . . . He is talking to himself. He is evasive and uncooperative. Thought processes are loose and tangential . . . . Reality orientation is poor. He is not oriented to time or place. Insight and judgment are poor. . . . The patient obviously is in need of medications because of his acute psychotic symptoms . . . .

A more complete inquiry by the state court would have also revealed Maxwell's Riverside General Hospital chart. According to the chart, on January 15, 1998—during the psychiatric hold and his murder trial—Maxwell was restrained in four-point leather restraints and involuntary administered heavy doses of the antipsychotic drug Haldol for "head banging and violent behavior." The trial judge's failure to make a more complete inquiry undermines the state court fact-finding

process, and the inadequacy of the fact-finding process undermines the facts themselves. *See Torres*, 223 F.3d at 1109 (noting that "the factfinding procedure by the judge was clearly inadequate" where defense counsel alerted the judge to competency concerns and the judge concluded without further inquiry that the defendant was competent); *Maddox*, 366 F.3d at 1005 (holding that the "failure to consider, or even acknowledge, [petitioner's] highly probative [evidence] casts serious doubt on the state-court fact-finding process"). In *Dyas v. Poole*, for example, we held that a state courts' finding of fact "was unreasonable in the absence of any inquiry to establish the facts." 317 F.3d 934, 936 (9th Cir. 2003). Here, the trial court similarly reached the factual conclusion that Maxwell's suicide attempt was feigned and that he was malingering without inquiry.

**[8]** Nonetheless—even without taking into account the graphic details reported in the section 5250 certification reports and medical chart—the successive involuntary holds by themselves, and in the context of the other evidence of incompetence, would have raised a doubt in a reasonable judge.

The California Court of Appeal disagreed. The court of appeal affirmed the trial court's finding, relying primarily on the following circumstances: (1) Maxwell's defense counsel did not declare that he had a doubt about Maxwell's competency; (2) the court's finding that Maxwell merely feigned his inability to control his conduct during the trial; and (3) the trial judge's reliance on a competency assessment conducted thirteen months before the start of trial, which found that Maxwell was feigning mental illness and embellishing a psychosis. We address each in turn.

**[9]** First, the court of appeal inappropriately attributes great weight to the fact that Maxwell's counsel did not request a competency hearing. As *Pate* and *Drope* make clear, "[w]here the evidence raises a 'bona fide doubt' as to a defen-

dant's competence to stand trial," a trial judge has an independent duty to conduct a competency hearing "on *his own* motion." *Pate*, 383 U.S. at 385 (emphasis added); *see also Drope*, 420 U.S. at 181 (explaining that "*a trial court* must always be alert to circumstances suggesting . . . [a defendant's lack of] competence to stand trial" (emphasis added)). Furthermore, as *Pate* explains, it is contradictory to argue that a potentially incompetent defendant can knowingly waive "his right to have the court determine his capacity to stand trial." 383 U.S. at 384. Finally, although we acknowledge that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense," *Medina v. California*, 505 U.S. 437, 450 (1992), we have recognized that "counsel is not a trained mental health professional and his failure to raise petitioner's competence does not establish that petitioner was competent." *Odle v. Woodford,* 238 F.3d 1084, 1089 (9th Cir. 2001).

Here, defense counsel did not formally request a competency hearing, but he did on numerous occasions express concern that Maxwell was unable to aid in his own defense. Maxwell's counsel informed the court that he was concerned about Maxwell's ability to stand trial because Maxwell was deteriorating, not communicating with defense counsel, and exhibiting paranoid behavior. Maxwell's counsel alerted the court to Maxwell's history of mental health problems and use of psychiatric drugs. And, after Maxwell was placed on a 14-day involuntary psychiatric hold, defense counsel asked the trial court whether the 14-day hold affected the court's determination that Maxwell was voluntarily absent from his own trial and recommended that the court inquire and obtain a report from the doctors whose evaluations triggered the hold. In sum, although Maxwell's counsel did not formally request a competency hearing, defense counsel clearly expressed concern about Maxwell's competence.

**[10]** Second, the trial court found that Maxwell was malingering and that his "cursing and disruptive conduct" in the

courtroom was voluntary. The state court of appeal upheld the finding and concluded that Maxwell's disruptive behavior during trial amounted to no more than "affirmative efforts to appear psychotic" and an "unwillingness" to participate in his defense. Evidence of a defendant's demeanor at trial is one of the factors, under *Drope*, that a court may consider in determining whether a competency hearing is required. 420 U.S. at 180; *see Torres*, 223 F.3d at 110 ("Although 'bizarre actions' are not necessarily sufficient evidence to compel a *Pate* hearing, they are a factor to be considered."). In *Torres*, we held that a competency hearing was required where defendant believed his attorney was part of a conspiracy against him, threatened to assault his attorney, insisted on being handcuffed, and continually disrupted the trial until he was removed from the courtroom. 223 F.3d at 1109-10. Here, Maxwell's behavior was equally bizarre, irrational, and disruptive. As we detailed above, Maxwell mumbled and shouted obscenities during the pre-trial conference, he had to be physically restrained by his own counsel, he requested that his counsel be fired, his communication with his counsel was so strained that defense counsel stated that he was unable to develop a theory of the case or prepare an opening statement, and Maxwell asked that his attorney hand over evidence helpful to the prosecution. Also, as in *Torres*, Maxwell was ultimately removed from the courtroom due to his inability to control himself. In sum, contrary to the trial court's finding, Maxwell's unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required.

**[11]** Third and finally, it is undisputed that a "prior medical opinion on competence to stand trial" is "relevant in determining whether a further inquiry [into competence] is required." *Drope*, 420 U.S. at 180. Here, however, there was substantial evidence that Maxwell's mental condition had significantly deteriorated since the initial pretrial 1996 competency determination. "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render

the accused unable to meet the standards of competence to stand trial." *Id.* at 181. For example, in *Torres*, we held that, despite a determination prior to trial that the defendant was competent, in the face of significant indicia of incompetence during trial, the "previous conclusion that [defendant] was competent to stand trial [did] not obviate the need for a hearing." 223 F.3d at 1110. By the time of Maxwell's murder trial, the December 1996 competency determination was thirteen months old. That determination was itself based on aging psychiatric evaluations that were, by the time of Maxwell's trial, eighteen months old. After so much time had passed, the trial court would have been unreasonable in relying solely on a stale competency determination in the face of contradictory evidence. *See de Kaplany*, 540 F.2d at 980-81 (stating that once there is substantial new evidence of incompetency, a bona fide doubt is raised that "cannot be dispelled by resort to [pre-existing] conflicting evidence"). Furthermore, we have repeatedly acknowledged that a defendant's competency can change within a short period of time. *See, e.g., Miles v. Stainer*, 108 F.3d 1109, 1113 (9th Cir. 1997) (recognizing a change in competency within one month); *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981) (noting that old psychiatric reports may lose their probative value over time, especially if subsequent facts and circumstances contradict their conclusions).

Finally, as in *Drope*, the eighteen month old psychiatric assessments "did not stand alone." 420 U.S. at 180 (internal quotation marks omitted). There was overwhelming evidence that regardless of the prior competency determination, Maxwell was incompetent at the time of his 1998 murder trial. Maxwell was involuntarily committed pursuant to 72-hour and 14-day holds at the Riverside General Hospital psychiatric unit during his trial; attempted suicide during his trial; had a known history of mental illness; was prescribed antipsychotic medications, which he frequently refused, during his trial; had numerous outbursts that resulted in his removal from the courtroom; and exhibited paranoid and psychotic behavior

that impaired his communication with his attorney and reasoning regarding his defense. All of these circumstances were known to the trial judge. On this record, the court's determination that there was no need for a new competency hearing was an unreasonable factual determination and an unreasonable application of *Drope* and *Pate*.

**[12]** Having considered all of the evidence before the state court, we conclude that Maxwell's inability to control himself in court, his suicide attempt, his history of mental illness, his impaired communication with defense counsel, and his 14-day involuntary psychiatric hold during his trial would have raised a bona fide doubt in a reasonable trial judge that he was no longer able to "consult with his lawyer with a reasonable degree of rational understanding." *Dusky*, 362 U.S. at 402 (internal quotation marks omitted). The state trial court's failure to declare a bona fide doubt as to Maxwell's competency to stand trial and its failure to conduct *sua sponte* a competency hearing violated Maxwell's due process rights, and the state appellate court's decision to affirm the state trial court's finding that Maxwell was not entitled to a competency hearing was an unreasonable determination of the facts in light of the evidence known by the trial judge, 28 U.S.C. § 2254(d)(2), and an unreasonable application of federal law as established by *Drope* and *Pate*, 28 U.S.C. § 2254(d)(1).

## IV.   Remedy

**[13]** This court "disfavor[s] retrospective determinations of incompetence," *see Williams v. Woodford*, 384 F.3d 567, 608 (9th Cir. 2004), and they are reserved for those cases where it is possible to "conduct a meaningful hearing to evaluate retrospectively the competency of the defendant." *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1995), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *see Drope*, 420 U.S. at 183 (holding that "[g]iven the inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances," a retrospective competency

hearing six years after the trial was not possible). In determining whether such a hearing is warranted, we evaluate such factors as the passage of time and the availability of contemporaneous medical reports. *Moran*, 57 F.3d at 696; *see also McMurtrey*, 539 F.3d at 1131-32.

In *Pate*, for example, the Court explained the difficulties in conducting a retrospective competency hearing in that case. 383 U.S. at 387. In particular, as we have noted, the Court reasoned in *Pate*

> that the inability of the jury to observe the demeanor of the accused, the fact that expert testimony would have had to have been based solely on the printed record, and the six-year lapse between the time of trial and the proposed post-conviction hearing combined to compromise such a hearing beyond redemption.

*de Kaplany*, 540 F.2d at 986 n.11 (discussing *Pate*). Similarly, in *McMurtrey* we concluded "that because of the thirteen-year delay, the lack of contemporaneous medical opinions, and the lack of medical records, the state trial court could not in 1994 meaningfully determine whether [the defendant] had been competent at trial in 1981." 539 F.3d at 1132.

**[14]** Here, as in *Pate* and *McMurtrey*, substantial time has elapsed. Maxwell's conviction is twelve years old. Moreover, although some records were prepared in connection with the holds under sections 5150 and 5250, the contemporaneous medical reports are, for the most part, short form letters. A meaningful retrospective competency determination, given the twelve-year delay and sparse medical record, is not possible. *See Pate*, 383 U.S. at 387; *McMurtrey*, 538 F.3d at 1132.

Because we cannot conclude that a retrospective competency hearing would be possible here, we remand with direc-

tions to grant Maxwell a writ of habeas corpus. The state remains free to retry Maxwell.

## V. Conclusion

[15] We conclude that the state trial and appellate courts unreasonably determined that Maxwell was not entitled to a competency hearing under *Pate*. We therefore reverse the district court's judgment and remand with directions to grant a writ of habeas corpus directing the state to provide Maxwell with a new trial in a reasonable amount of time or release him.

REVERSED AND REMANDED.