**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AARON ANDERSON, *Petitioner-Appellant*, | No. 16-15338 |
| v. | D.C. No. 2:12-cv-02964-KJM-KJN |
| CONNIE GIPSON, Warden, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted June 15, 2018
San Francisco, California

Filed September 6, 2018

Before: Mary M. Schroeder, David M. Ebel,[*]
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Ebel

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's denial of California state prisoner Aaron Anderson's 28 U.S.C. § 2254 habeas corpus petition challenging his conviction for domestic violence, assault, and vandalism.

The panel held that the California Court of Appeal's decision denying Anderson relief on his claim that the trial court violated his due process rights by failing to order *sua sponte* a competency hearing involved an unreasonable application of clearly established federal law. The panel explained that in the face of strong indicia of incompetence, including a bona fide suicide attempt on the eve of trial, *Pate v. Robinson*, 383 U.S. 375, 385 (1966), and its progeny demand more than explanation; they demand a competency hearing.

The panel remanded the case to the district court with instructions to grant the writ unless, within a reasonable time, the State grants a new trial; and dismissed as moot Anderson's appeal as to claims of error involving his *Faretta* waiver and shackling during trial.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ann Catherine McClintock (argued), Assistant Federal Defender; Heather E. Williams, Federal Defender; Office of the Federal Defender, Sacramento, California; for Petitioner-Appellant.

David Andrew Eldridge (argued) and Justain P. Riley, Deputy Attorneys General; Michael P. Farrell, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Respondent-Appellee.

**OPINION**

EBEL, Circuit Judge:

In 2008, Petitioner Aaron Anderson was convicted of domestic violence, assault, and vandalism stemming from a physical quarrel with his on-again, off-again live-in girlfriend. Pursuant to California's Three Strikes law, Anderson was sentenced to fifty-four years to life. After exhausting his state remedies, Anderson sought a writ of habeas corpus in federal court, alleging constitutional violations involving (1) the failure of his trial judge to call *sua sponte* for a competency hearing, (2) the failure of the trial judge to revoke *sua sponte* his *Faretta* waiver, and (3) the trial court's decision to keep him shackled during trial.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") sets a high bar for a state petitioner seeking to establish a constitutional violation. Mindful of that bar, we nonetheless conclude it was error for the state trial judge not

to *sua sponte* order a competency hearing given the numerous signs of Anderson's mental incompetency, including his suicide attempt on the eve of trial. Accordingly, we REMAND the case to the district court with instructions to grant the writ unless, within a reasonable time, the state grants a new trial consistent with this opinion. Because of our ruling on the competency issue, we need not address Anderson's other issues, and we therefore DISMISS as moot his appeals as to the *Faretta* and shackling issues.

## I. BACKGROUND

The following facts are drawn primarily from the opinion of the California Court of Appeal in Anderson's direct appeal.[1]

In 2007 Mr. Anderson and the victim, his on-again, off-again girlfriend, attended a wake for Anderson's nephew. This wake left Anderson "distraught," and he drove with his brother and the victim to the grocery store. When the victim refused to join the brother and Anderson for a drink, Anderson "hit her behind her right ear and grabbed the car keys, heading for the store. As she followed him toward the store, he struck her again, knocking her down."

The victim got up and continued into the store, where she asked the manager if she could call 911. "After she made the call, [Anderson] tried to grab the phone out of her hand. He put his arm around her neck and dragged her backward about 15 feet before throwing her to the ground." The victim got up and climbed back into the car, but Anderson climbed

---

[1] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (instructing that federal habeas courts should "look through" unexplained state court decisions to the "last related state-court decision that does provide a relevant rationale").

in with her.  The two drove off, but were intercepted by police shortly afterwards.  Officers took Anderson into custody, but after he was placed into a police cruiser he kicked out the cruiser's window.  When police examined the victim, she had "a two- by one-inch 'painful' contusion behind [her] ear, bruises, and a lump on her head."

The incident at the supermarket was caught on the store's surveillance cameras. According to the California Court of Appeal, the video "did not show the victim attacking [Anderson] in the car," as Anderson claims, but instead

> it showed him on top of her in the car drawing his hand back several times; it showed him standing above her as she lay on the ground outside the market, moving his arms and legs; and it showed him swinging his arms as he stood over her in the store after shoving her to the ground.

## A.  *The Initial Proceedings Before State Judge Balonon*

Anderson was charged with inflicting injury on a cohabitant, assault by means of force likely to inflict great bodily injury, vandalism, and resisting a peace officer. Because of prior California convictions, his trial became a "three strikes case" under California law, greatly enhancing the penalties Anderson faced.  Anderson was set to proceed to trial on these charges in October of 2007 before The Honorable Eugene Balonon.

At the outset of the Balonon proceedings Petitioner's counsel indicated that "relations with his client were rocky but repairable."  The next day, however, Petitioner, who had been detained awaiting trial, refused to come to court, and counsel raised concerns about his client's competency to

proceed.  ER 68 ("Defense counsel reported that 'I don't think I can raise things to the level of a doubt of his competency.  But I do have some concerns' about defendant not presently taking the anti-depressants previously prescribed for him while in jail[.]").  At this point defense counsel requested a short continuance to "get an evaluation of defendant from professionals with whom he was familiar and who could work quickly[,]" but Judge Balonon and the prosecutor both expressed concern that doing so would offer Petitioner an "indication that being difficult would result in . . . delay of the proceedings."

The point became moot, however, when Petitioner arrived in court in the afternoon.  He was wearing his jail attire, and refused to change into civilian clothes.  Given the opportunity to address Judge Balonon, Petitioner

> asserted that he did not want to be there, that he was not mentally prepared, and [that] he did not understand what was happening.  He said that he had stopped taking his medication and thought the strain of the proceedings might leave him unable to be present throughout them.  He also had been having trouble eating and sleeping.

Despite these statements from the defendant, Judge Balonon observed that defendant had become emotional during a colloquy as to the impact of his previous convictions on his current case and noted that he "believed that defendant was simply experiencing the ordinary stress of facing trial (rather than facing an incipient mental breakdown)."  Judge Balonon then stated for the record: "There is nothing that I can find from my interaction and my observation of Mr. Anderson that would in any [ ] way . . . indicate that he

doesn't know what was going on . . . either today or in the prior proceedings . . . ."

At this point the Balonon proceedings moved into voir dire, and Judge Balonon asked the courtroom bailiff about the necessity of restraining the defendant in open court. According to the California Court of Appeal, "[t]he court concluded it did not find any basis for any restraints." Despite that conclusion from the court, Anderson nonetheless said he wanted to remain in shackles. Judge Balonon ordered the bailiff to release Petitioner's ankle shackles, but keep the belly-chain shackles in place.

The proceedings continued briefly, before recessing for the weekend still in the middle of voir dire. When the jury returned to court on the following trial date, a Monday, "[Judge Balonon] announced that [he] was continuing the proceedings in order to evaluate defendant because [Anderson] had attempted suicide over the weekend." At this point the jury panel was dismissed for good cause.

### B.  *The Proceedings Before State Judge Orr*

After several continuations, including one at which defense counsel informed the court that he intended to have outside experts conduct a psychological evaluation of Petitioner, the case proceeded to trial roughly three months later before a different judge, The Honorable Joseph Orr. At this point Petitioner indicated that he wanted to proceed pro se.

In doing so, Petitioner "explained that he felt the outcome of the trial was inevitable and he would rather reach that result on his own than with someone else representing him." After some discussion, Judge Orr told Petitioner that he "would accept his waiver [of his right to counsel]

notwithstanding his refusal to acknowledge that he could not raise the incompetence of his own trial performance on appeal." The trial court also appointed stand-by counsel. The case then proceeded to voir dire.

Prior to voir dire, the court also discussed whether Anderson would be shackled. The bailiff indicated that defense counsel had asked for the restraints to be removed but "it doesn't make any difference to defendant whether or not he ha[s] restraints on." The California Court of Appeal assumed that this comment was a reference to the previous proceedings when Petitioner had requested to remain in shackles. This time, however, Anderson "asserted that he did not pose any threat and voiced objection to the full restraints that the deputies wanted as a matter of course." Judge Orr ruled that Petitioner's primary shackles would be removed, but that he would still be chained to his chair. Petitioner "expressed his satisfaction with this arrangement." According to the California Court of Appeal, "the record does not indicate whether or not there was an adjustment of the chain in front of the jury," and "nothing affirmatively indicates that the jury actually saw the chair chain, nor does anything indicate that defendant testified in a chair restraint."

That is not to say that the jury was unaware of Petitioner's shackles. While one witness was being direct-examined, Petitioner twice indicated to the court in the presence of the jury that the chain was too tight. Then, during jury instructions, Judge Orr instructed the jury to disregard the fact that "physical restraints have been placed on Aaron Anderson." Based on these two statements, even if the jury were unable to see the shackles, they certainly were aware of them.

Petitioner—now representing himself—did not "meaningfully" participate in voir dire. This resulted in an all-female jury, including one juror who herself had been a victim of domestic violence and one whose "best friend" had been the victim of domestic violence.[2]

At the start of trial on the second day, Judge Orr reminded Petitioner that defense counsel was standing by, but Petitioner did not respond. While the first witness was being presented, Petitioner blurted out that he felt "overwhelmed," and when it came time to conduct cross-examination he admitted that he did not know how to cross-examine a witness. Judge Orr called a recess after that witness, and Petitioner "confessed that he was legally inadequate, and was feeling an extreme amount of stress." Judge Orr then recessed the trial to the following Monday to allow time for Petitioner to go to the prison law library and prepare.

When the trial reconvened, Petitioner again complained about his lack of legal knowledge. During the examination of at least one witness he was silent, even when asked if he wanted to conduct cross-examination. When the victim took the stand, Petitioner "repeatedly interrupted the questioning," calling the victim names and pleading with her to tell the truth.

> When the court called the noon recess, defendant had an emotional outburst

---

[2] Judge Orr allowed the former to sit on the jury after she testified that she could be impartial because the violence against her had occurred well in the past, and the latter because she testified that her friend having been the victim of domestic violence had not "affected [her] in any way." Petitioner did not challenge either of these jurors for cause or use his peremptory challenges on them (or any other jurors).

(apparently directed at the prosecutor) and asked to rescind his waiver of counsel. He also demanded a mistrial. After the recess, defendant apologized for his behavior and again requested a mistrial. At the conclusion of the afternoon's proceedings, the court granted defendant's request to revoke his waiver of counsel and reappointed defense counsel.

Defense counsel had been on stand-by, but had not been present during the entire trial.

The jury ultimately convicted Petitioner on the domestic violence, assault, and vandalism counts.[3] Based on California's Three Strikes law, he was sentenced to fifty-four years to life in prison with the possibility of parole.

## II.  PROCEDURAL HISTORY

Petitioner raised each of the issues relevant to this appeal during his direct appeal, but each was rejected by a reasoned opinion of the California Court of Appeal. The California Supreme Court denied Petitioner's petition for certiorari without comment. Our review, therefore, focuses on the California Court of Appeal's reasoning in denying relief on the three issues presented here. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Petitioner later sought state habeas review of several issues irrelevant to this appeal, but those

---

[3] A mistrial was declared on the basis of a hung jury as to the last charge, resisting a peace officer, but that determination is not before us on appeal.

claims were denied as well without a further reasoned opinion.

In 2012, proceeding pro se, Anderson petitioned the federal district court for habeas relief. In March 2014, a federal magistrate issued Findings and Recommendations to deny all relief. Anderson timely objected to those Findings and Recommendations, and the district court ordered the State of California to provide some missing records, including any report filed by any doctor who examined Petitioner after his suicide attempt and before the trial resumed in front of Judge Orr. The State filed a declaration averring that no such report existed, but that it had been in contact with Petitioner's trial counsel, who explained that a doctor had examined Anderson, and that "it was his common practice with [the psychologist who examined Anderson] that no written report was made when the results of the evaluation did not raise concerns about competency. . . . [The psychologist's] examination of Petitioner did not raise doubts about Petitioner's competency."[4]

After receiving this declaration and the other requested documents, the district court issued an order adopting in full the Findings and Recommendations of the magistrate and denying habeas relief. The district court also denied a certificate of appealability. Petitioner timely filed a notice of appeal, and the Ninth Circuit granted a certificate of appealability on the following claims: "whether the trial court violated the appellant's right to due process by failing

---

[4] Petitioner's trial counsel's statement was not under oath, nor had it ever been submitted to any state court nor has it ever been tested by cross-examination for accuracy or veracity. And we also note that Anderson denied in his pro se objections to the magistrate's findings and recommendations that any such examination ever occurred.

to revoke his pro se status, failing to hold a competency hearing, and allowing him to remain shackled during trial." At this point we also granted Petitioner's motion for appointment of counsel.

## III.  DISCUSSION

AEDPA sets forth two circumstances in which a federal court may grant habeas relief to a state prisoner: (1) if the state proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) if those state proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d). Because the first clause can be further bifurcated into two sets of circumstances, Anderson's petition must fail unless he can convince us his state court proceedings resulted in a decision that (1) was contrary to clearly established federal law as determined by the Supreme Court, (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court, or (3) was based on an unreasonable determination of the facts in light of the evidence presented at his trial. *Id.*  It is the first two of these § 2254 sets of circumstances that are involved in the dispositive issue in this appeal.

A decision is contrary to clearly established Supreme Court law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotations omitted).  While circuit precedent may be "persuasive" in establishing the contours of Supreme Court authority, *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010), it cannot "refine or sharpen a general principle of Supreme Court jurisprudence

into a specific legal rule that [the Supreme Court] has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

Assuming the state court identifies and applies the correct legal standard, the second inquiry becomes whether the state court unreasonably applied clearly established federal law. This question, however, does *not* ask whether the federal court, on direct review, would have reached a different decision than did the state court, but only whether the state court "unreasonably" applied the correct legal principle to the facts of petitioner's particular case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the *Richter* standard, our inquiry is designed not to probe what arguments exist for overturning the state court's determinations, but rather whether "'arguments or theories . . . could have supported' the state court's . . . decision." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018) (quoting *Richter*, 562 U.S. at 102). "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Richter*, 562 U.S. at 102).

But while setting a high standard for relief, AEDPA protects and preserves the critical role federal courts play in identifying and correcting constitutional errors. Even under the strict dictates of AEDPA, constitutional infirmity in a state court conviction does not become immunized against federal review by virtue of subsequent affirmances in the state courts of appeals. *See Slack v. McDaniel*, 529 U.S. 473,

483 (2000) ("The writ of habeas corpus plays a vital role in protecting constitutional rights.").

We review the district court's denial of Anderson's petition de novo, *Yee v. Duncan*, 463 F.3d 893, 897 (9th Cir. 2006), and its factual determinations for clear error, *Paulino v. Harrison*, 542 F.3d 692, 698 (9th Cir. 2008).

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Furthermore, in some trials, there comes a point where the defendant's behavior displays such marked indicia of incompetence that the trial court violates due process by not *sua sponte* suspending proceedings and conducting a hearing into defendant's competency to stand trial. *See, e.g.*, *Drope*, 420 U.S. at 180; *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *de Kaplany v. Enomoto*, 540 F.2d 975, 979–81 (9th Cir. 1976). Anderson argues that his erratic behavior during the course of the judicial proceedings in this case crossed this line. While the California Court of Appeal apparently identified the correct standard, its application of that standard was contrary to clearly established federal law as determined by the Supreme Court.

"Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion *must* impanel a jury and conduct a sanity hearing pursuant to" the relevant state procedures. *Pate*, 383 U.S. at 385 (emphasis added) (citing *People v. Shrake*, 182 N.E.2d 754 (Ill. 1962)). Since *Pate*, courts, including the Ninth Circuit, have generally adopted the "bona fide doubt" standard as to when a trial court is required to order a

competency hearing before proceedings may continue.[5] *See, e.g.*, *de Kaplany*, 540 F.2d at 979. A few years later the Supreme Court explained that the "import" of its decision in *Pate* "is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of those factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180.

Looking at these factors, Anderson's case checks two if not all three of these evidentiary boxes. His behavior was irrational, especially when he declined to participate in the voir dire process, resulting in an all-female jury which included multiple jurors with personal connections to domestic violence. His demeanor at trial was erratic and marked by intermittent withdrawal from the proceedings and

---

[5] At oral argument the State suggested, based on language from *Drope*, that *Pate*'s "bona fide doubt" standard was too case-specific to constitute the "clearly established" federal law required by AEDPA. *See Drope*, 420 U.S. at 172 (explaining that *Pate* did not "prescribe a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure"). However not only does the "bona fide doubt" standard enunciated in *Pate* accord with the general evidentiary inquiries outlined in *Drope*, but Circuit authority can be "persuasive" in determining the contours of clearly established Supreme Court law, *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010), and the Courts of Appeals have uniformly interpreted *Pate* and *Drope* as outlining a generally applicable "bona fide doubt" standard. *See, e.g.*, *Austin v. Davis*, 876 F.3d 757, 781 (5th Cir. 2017); *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015); *Johnson v. Singletary*, 162 F.3d 630, 634 (11th Cir. 1998); *cf. People v. Rogers*, 141 P.3d 135, 152 (Cal. 2006) (citing Cal. Penal Code § 1368) (establishing that under California law the trial court judge is required to "suspend trial proceedings and conduct a competency hearing" if he is "presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial").

profane outbursts.  And while there is a dispute over whether Petitioner received a mental health evaluation between the Balonon proceedings and the Orr trial, no mental evaluation was submitted into the state record.  At the very least Anderson's suicide attempt which aborted the Balonon proceedings should have left the court insistent on receiving the results of any such promised mental examination when the case resumed.  Finally, while there was a roughly three-month gap between the Balonon proceedings and the Orr trial, there is nothing in the *trial court* record that suggests any amelioration of Petitioner's mental incompetence during that hiatus.

Considered holistically, the trial judge was or should have been aware of the following indicia of incompetence: (1) Petitioner's disengagement during voir dire, which shows he did not have the wherewithal to remain engaged in the trial, (2) that he permitted a jury of all women, including one with a personal experience involving domestic violence and one whose best friend was a victim of domestic violence, to be empaneled in this case, where he was charged with domestic violence, (3) that he did not object to shackles during trial, and even affirmatively requested them during the Balonon proceedings, (4) his bizarre performance during trial, including his emotional outbursts, (5) wearing prison clothes to court one day during the Balonon proceedings, and refusing to change, (6) refusing to show up in court one morning during the Balonon proceedings, (7) that Petitioner's own attorney expressed concern regarding his mental competency during the Balonon proceedings, and (8) his suicide attempt.  Taken together, these indicia raise such a bona fide doubt as to Anderson's competence to stand trial that the trial court erred in not *sua sponte* ordering a competency hearing before the trial resumed.

Regarding whether a mental health evaluation occurred between Anderson's suicide attempt and the Orr proceedings, Anderson maintains that no such examination ever occurred and there was no state court hearing to resolve that factual dispute.  Further, if there was such an examination, it was never submitted to Judge Orr nor tested in any state judicial proceeding.  This lack of any information about any such examination in the trial court record is fatal to its ability to cure the constitutional deficiencies at issue.

The California Court of Appeal dismissed the above-referenced indicia of incompetence as demonstrating nothing more than "the expected reaction of an unprepared layperson thrust into the complexities of the ill-advised role of self-representation."  It also concluded that those actions, "far from being substantial evidence of [Anderson's] incompetence, demonstrate[] he knew far too well what was at stake, including his accurate assessment of the likelihood of his convictions."  This speculation represents only the impressions of the California Court of Appeal on the basis of a paper record rather than the contemporaneous observations of the trial court and a competency hearing where evidence could be considered and tested.  In the face of strong indicia of incompetence, including a bona fide suicide attempt on the eve of trial, *Pate* and its progeny demand more than such speculation: they demand a competency hearing.

Accordingly, we conclude that the California Court of Appeal's decision denying Anderson relief on this claim involved "an unreasonable application" of clearly established federal law.  In such circumstance the appropriate remedy is to remand the case to the district court with instructions to retain jurisdiction and grant the writ

unless, within a reasonable time, the State grants Anderson a new trial consistent with due process. *See, e.g.*, *Petrocelli v. Baker*, 869 F.3d 710, 731 (9th Cir. 2017) ("We remand with instructions to grant the writ . . . unless, within a reasonable time . . . the State grants a new . . . trial[.]"); *McKinney v. Ryan*, 813 F.3d 798, 827 (9th Cir. 2015) (en banc).

Because we find error in the state court's failure to order a competency hearing, we need not consider Anderson's further asserted grounds for relief.

## IV.  CONCLUSION

The issue before us is not whether Anderson is competent today, or whether a court—upon review of a stale record—believes he was competent a decade ago. The question is whether his behavior at trial, including his suicide attempt, created a "bona fide doubt" as to his mental competency. Upon the conclusion that it did, federal authority is clear: due process required the trial to cease until a competency hearing had been held. No such competency hearing was held, and accordingly, Anderson's due process rights were violated.

This case is **REVERSED** and the case is **REMANDED** to the district court with instructions to grant the writ unless, within a reasonable time, the State grants Anderson a new trial consistent with due process. Anderson's further claims of error involving his *Faretta* waiver and shackling during trial are **DISMISSED** as moot in light of our ruling on the competency issue.