Filed 6/28/23  P. v. Ward CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DELON BAPTISTE WARD,<br><br>　　Defendant and Appellant. | A162830<br><br>(Contra Costa County<br>　Super. Ct. No. 5–201379–5) |

Pursuant to a plea agreement, defendant Delon Baptiste Ward pleaded guilty to forcible rape and kidnapping and admitted firearm enhancements, and the trial court imposed the stipulated sentence of 36 years in prison.

On appeal, Ward contends the trial court erred in failing to declare a doubt about Ward's competence and in denying his attorney's motion to withdraw.  He further argues the matter must be remanded for resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (S.B. 567) and the imposition of a probation report fee must be stricken under Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (A.B. 1869).  The Attorney General agrees that the fee must be vacated.

We vacate the portion of the judgment imposing the probation report fee, and we remand to allow Ward to seek resentencing under S.B. 567.  We otherwise affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, the Contra Costa County District Attorney filed a criminal complaint against Ward charging him with aggravated kidnapping, forcible rape, sexual penetration by a foreign object, and additional offenses based on an incident alleged to have occurred on July 19, 2019.

On September 6, 2019, Ward, represented by the Public Defender's Office, pleaded not guilty. At the same hearing, Ward elected to represent himself in a separate misdemeanor matter. After questioning Ward, the trial court found him competent to represent himself in the misdemeanor matter.

In June 2020, the Public Defender's Office informed the court the office was unable to represent Ward because of a conflict of interest, and the court appointed an attorney to represent Ward.

On September 30, 2020, the trial court conducted the preliminary hearing and held Ward to answer on the complaint.

On October 7, 2020, the district attorney filed a six-count information charging Ward with kidnapping to commit another crime (Pen. Code,[1] § 209, subd. (b)(1); count 1), forcible rape (§ 261, subd. (a)(2); count 2), sexual penetration by foreign object (§ 289, subd. (a)(1)(A); count 3), criminal threats (§ 422, subd. (a); count 4), second degree robbery (§ 211; count 5), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 6). Ward was alleged to have personally used a deadly and dangerous weapon in the commission of the offenses (§ 12022, subd. (b)(1) as to counts 1 and 4 through 6; § 667.61, subds. (a) & (e)(3)) as to counts 2 and 3), and additional special circumstances were alleged regarding the sex offenses.[2] It was further

---

[1] Further undesignated statutory references are to the Penal Code.

[2] As to counts 2 and 3, it was alleged that Ward kidnapped the victim and the movement of the victim substantially increased the risk of harm to

alleged that Ward had two prior serious felony convictions (§ 667, subd. (a)(1)), which also qualified as strikes (*id.*, subds. (b)–(j); § 1170.12), and that he was on probation at the time he committed the current offenses.

On October 19, 2020, Ward's appointed counsel raised a concern about Ward's competence. The next day, after asking defense counsel about the reasons for his concern, the trial court determined that it did not have a doubt as to Ward's competence to stand trial. The court set a trial date of November 30, 2020.

On November 20, 2020, defense counsel filed a motion to be relieved as counsel. The trial court denied the motion.

At a trial readiness conference on February 5, 2021, the parties informed the court they had reached a plea agreement.[3] Under the negotiated disposition, Ward agreed to plead guilty to two offenses—forcible rape (count 2) and kidnapping in violation of section 207[4] (added as count 7)—with firearm enhancements under section 12022.53, subdivision (b), for

---

her (§ 667.61, subd. (d)(2)), kidnapped the victim in violation of sections 207, 209, or 209.5 (*id.*, subd. (e)(1)), and (as mentioned) personally used a dangerous or deadly weapon (*id.*, subd. (e)(3)) and that Ward is ineligible for probation (§ 1203.065, subd. (a)). The special circumstance of kidnapping where the movement substantially increased the risk of harm requires punishment of 25 years to life in prison. (§ 667.61, subd. (a).) The special circumstance of either using a weapon or kidnapping requires punishment of 15 years to life (*id.*, subd. (b)), and if both special circumstances are proved, the punishment is 25 years to life (*id.*, subd. (a)).

[3] After the trial date was continued a few times, trial was scheduled to start February 8, 2021.

[4] The sentencing triad for kidnapping is three, five, or eight years in prison. (§ 208.) In contrast, the punishment for kidnapping to commit robbery, rape, or other specified offense under section 209, subdivision (b)(1) (count 1) is life in prison with the possibility of parole.

both counts (added to count 2) and a stipulated sentence of 36 years in prison, in exchange for dismissal of the remaining counts and enhancements. The prosecutor stated a trailing misdemeanor case and trailing PRCS violation would be dismissed as well.

Defense counsel told the trial court he discussed the agreement with Ward and helped him execute the plea form. The court asked defense counsel, "Does [the signed plea form] tell me that you've reviewed this with your client, and you are confident that he fully understands all of his rights to a jury trial and all the consequences of pleading guilty to the charge in this case?" Defense counsel responded yes. Defense counsel stipulated to a factual basis for the plea based on the testimony at the preliminary hearing.

The trial court questioned Ward about his understanding of the agreement.[5] The court asked, "You do understand . . . that because I would find you guilty based on your own plea and not based on any finding a jury made, you cannot appeal that decision. [¶] Do you understand that?" Ward answered yes.

Ward then pleaded guilty to forcible rape with personal use of a firearm and kidnapping with personal use of a firearm. The court found Ward

---

[5] The trial court asked Ward if he had an opportunity to review the plea form with his attorney; if he understood all his rights to a jury trial; and if he understood all the consequences to the plea he was entering, and Ward answered yes to each question. Ward agreed that he understood he was pleading guilty to strike offenses; the sentence would be 36 years in state prison; he would have to register as a sex offender for life; and he would have to pay the victim restitution. The trial court asked Ward if he had been threatened to get him to enter a plea, and he responded no. The court asked if anyone had offered him or promised him anything other than the terms of the agreement discussed, and Ward said no. The court asked if he had taken any medications or other substances that would affect his ability to make this decision with his attorney that day, and Ward said no.

4

"freely, voluntarily, knowingly, and intelligently waived his right to a trial and entered the plea of guilty to the counts and enhancements in this negotiated plea agreement" and found a factual basis for the plea.

On April 2, 2021, the trial court sentenced Ward to 36 years in prison, dismissed the remaining charges and enhancements, and dismissed the separate misdemeanor and PRCS violation matters pursuant to the plea agreement. The 36-year sentence was composed of 18 years for count 2 (the upper term of eight years plus 10 years for the firearm enhancement) and a consecutive 18 years for count 7 (the upper term of eight years plus 10 years for the firearm enhancement).

In May 2021, Ward filed a notice of appeal and requested a certificate of probable cause. He alleged reasonable constitutional, jurisdictional, or other grounds going to the legality of the guilty plea were (1) "ineffective assistance of counsel," (2) he "was not competent at the time of his guilty pleas and did not knowingly and intelligently waive his rights," and (3) he "did not understand that he would be sentenced to 36 years in prison." The trial court granted the request for a certificate of probable cause.

## DISCUSSION

A. *The Decision Not to Suspend Proceedings for a Competency Trial*

Ward contends the trial court's failure to suspend proceedings under section 1368 after defense counsel expressed a doubt about his competence to stand trial violated his right to due process.

1. Background

At arraignment following the preliminary hearing and filing of the information, defense counsel raised a concern about Ward's competence to stand trial. The next day, October 20, 2020, the trial court questioned

5

defense counsel in camera regarding his reasons for doubting Ward's competence to stand trial.

Defense counsel stated that, at the preliminary hearing three weeks earlier, Ward "was uncommunicative." At the time, defense counsel "just thought [Ward] didn't feel like talking." But, he continued, "I went to visit him for the hearing yesterday, and it was apparent that he didn't understand me. He just looked at me with a blank look, and we were unable to have any kind of meaningful conversation. He kept shaking his head and, you know, saying things like, 'What?' [¶] And to provide a bit of context . . . there is a video of his interrogation, and towards the end of it, when the detectives leave the room and he is left alone for a short while, he did briefly talk to himself. So I am not a psychologist. I don't know if the two phenomena are related, but it has caused me to now have a doubt."

The trial court asked whether Ward was housed in the "mental health module" in jail and whether there had been section 1368 proceedings in any of Ward's previous criminal cases or "any previous 5150 commitments."[6] Defense counsel answered, "Not that I am aware of," and, "Not that I know."

The court asked whether Ward had been communicative with him in the past, and defense counsel responded, "Yes. Previously, we did have conversations regarding the case." The court asked about the video interrogation that defense counsel mentioned in which Ward "briefly talk[ed] to himself." Defense counsel described that Ward "said something to the effect of, 'My DNA is inside of her?' like, incredulously, like he is surprised."

---

[6] Under Welfare and Institutions Code section 5150, subdivision (a), a person may be held in "custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention" when "as a result of a mental health disorder, [the person] is a danger to others, or to themselves, or gravely disabled."

6

The court observed that Ward's statement regarding DNA was "appropriate to the charges," and defense counsel agreed it was.

The court asked what counsel meant by "uncommunicative," and defense counsel replied, "I mean, he said very little. He did say—at one point, say 'I don't understand.' That was about the lengthiest statement I got out of him." Defense counsel said this was different from previous visits, in which "it had been a conversation, and [Ward] had made comments regarding his case."

The court asked what preceded Ward saying to defense counsel that he did not understand. Defense counsel responded that he had been explaining arraignment and whether Ward would waive time. Defense counsel added that Ward also said he was " 'not understanding' " at the end of the preliminary hearing (on September 30).

The court asked whether counsel "developed any investigation or evidence that he suffers from any learning disabilities . . ., diagnosed mental illnesses, or undiagnosed illnesses." Defense counsel answered that he had not as "[t]his just arose." Responding to further inquiry, defense counsel told the court he was appointed to represent Ward on May 7, 2020, there had been multiple court dates before the preliminary hearing, and the Public Defender never expressed a doubt about Ward's competence to stand trial. Defense counsel agreed with the court that between May and September 30, he "had not developed any information . . . that would lead [him] to doubt [Ward's] competence" and that his concern was based on Ward's lack of responsiveness on two recent occasions: at the preliminary hearing (September 30) and the day he alerted the court of his concern (October 19).

Finally, the court asked if counsel had "[a]nything else to offer on record," and he did not.

7

The trial court then found that it did "not entertain a current doubt as to the defendant's current competence to stand trial" on the record before it. The court explained its reasoning: "The questions that [Ward] asked [his counsel] are not . . . standing alone, suggestive to me of a lack of understanding due to mental illness or learning disabilities. [¶] The explanation of one's speedy hearing rights, or even forensic evidence in these types of cases, can be difficult for anyone to understand. . . . [That] does not engender a doubt in my mind, nor does the fact that . . . he is seen on the video, making one comment to himself after police have left a room, 'They have my DNA inside of her?' That's appropriate to the line of questioning and the interrogation that he was subject to. It's not delusional thinking. It was not a long, incessant stream of consciousness ramble. There is nothing reported on the video that he is acting inappropriately, or in a psychotic way, or in any way that suggests that he doesn't understand the questions put to him or the subject matter.

"So all we have is, at this point, at the time of the preliminary hearing, some incredulousness on [Ward]'s part as to the nature of the evidence or the fact that he is being held to answer. That alone is not an example of mental illness or learning disability. That's quite common for accused defendants. [¶] And the subsequent meeting with [defense counsel], where he had questions about his procedural rights that were being explained to him also do not suggest that to me. [¶] He may have spoken minimally to [his attorney] but, again, that alone, or even in tandem with the comments I have made, does not suggest to me mental illness, or a lack of a learning disability [*sic*] that wasn't present to [defense counsel] in the five months before that point or, apparently, to [prior counsel from the Public Defender's Office]."

The court noted that, in this case (which started in July 2019), no one previously declared a doubt about Ward's competence; Ward was not placed in the mental health module in jail (and so he had not been identified as needing mental health treatment while in custody); Ward had an extensive criminal history in the county (going back to 2006), but there was no indication that any prior attorneys had expressed a doubt about his competence; and there was no evidence he had ever been detained for a mental health assessment under Welfare and Institutions Code section 5150.

The court concluded, "[O]n this record, it's too thin. I do not maintain the substantial doubt as to the defendant's current competence to stand trial based on this record, due to either mental illness, or a learning deficiency, under 1368, or 1370, respectively. [¶] My ruling is without prejudice to later developments in this case."

A month later, defense counsel filed a motion to be relieved as counsel. At the hearing on the motion, defense counsel told the court he visited Ward that week and Ward "did not communicate with [counsel], other than to repeatedly say, I don't understand." The trial court asked if defense counsel had anything further to argue, and defense counsel responded, "I guess in the alternative, I would also again ask the Court to declare a doubt, based on the new information I have provided, on top of what I testified to at the previous request . . . ." The court did not declare a doubt about Ward's competence to stand trial.

2. Applicable Law and Standard of Review

" ' "Both the due process clause of the Fourteenth Amendment . . . and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent." ' " (*People v. Mai* (2013) 57 Cal.4th 986, 1032 (*Mai*).) "A defendant is incompetent to stand trial when 'as a result

9

of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a); [citation].)" (*People v. Parker* (2022) 13 Cal.5th 1, 28 (*Parker*).)

"Section 1368 states that a judge may suspend proceedings and hold a competency trial if 'a doubt arises in the mind of the judge as to the mental competence of the defendant.' Section 1369 sets forth the procedure for holding a competency trial." (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 466 (*Sattiewhite*).) A defendant is presumed to be "mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (f).)

"The trial court's 'duty to assess competence is a continuing one.' [Citation.] The obligation to suspend proceedings and hold a competency trial is triggered whenever ' "the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial." ' " (*Parker*, *supra*, 13 Cal.5th at p. 28.)

"Substantial evidence of incompetence exists when a qualified mental health expert who has examined the defendant states under oath, and 'with particularity,' a professional opinion that because of mental illness, the defendant is incapable of understanding the purpose or nature of the criminal proceedings against him, or of cooperating with counsel. [Citations.] [¶] The defendant's demeanor and irrational behavior may also, in proper circumstances, constitute substantial evidence of incompetence. [Citation.] . . . [¶] Counsel's assertion of a belief in a client's incompetence is entitled to some weight. But unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject,

counsel's assertion that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing." (*Mai, supra*, 57 Cal.4th at pp. 1032–1033.)

" '[M]ore is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation].' " (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270.)

" 'The decision whether to order a competency hearing rests within the trial court's discretion, and may be disturbed upon appeal "only where a doubt as to [mental competence] may be said to appear as a matter of law or where there is an abuse of discretion." ' [Citation.] '[A]bsent a showing of "incompetence" that is "substantial" as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial.' " (*Parker, supra*, 13 Cal.5th at p. 29.)

"In summary, defense counsel must present expert opinion from a qualified and informed mental health expert, stating under oath and with particularity that the defendant is incompetent, or counsel must make some other substantial showing of incompetence that supplements and supports counsel's own opinion. Only then does the trial court have a nondiscretionary obligation to suspend proceedings and hold a competency trial. [Citation.] Otherwise, we give great deference to the trial court's decision not to hold a competency trial." (*Sattiewhite, supra*, 59 Cal.4th at p. 465.)

11

3.    Analysis

"[D]efense counsel's expressed belief that defendant might be mentally incompetent does not automatically trigger a section 1369 competency trial." (*Sattiewhite*, *supra*, 59 Cal.4th at p. 465.)  Ward claims, "Here, the record supports counsel's assessment" of possible incompetence, but he points to nothing in the record that provides such support.  Defense counsel offered no evidence that a mental health expert had examined Ward and reached a professional opinion that Ward was unable to understand the nature of the criminal proceedings or to assist counsel because of a mental health disorder or developmental disability.  Nor does the record reflect that Ward displayed irrational behavior or that anything about his demeanor indicated he was incompetent to stand trial.  The trial court inquired, and defense counsel had no information indicating Ward had a history of mental health issues or developmental disability.  A month later, defense counsel briefly mentioned the issue of competence again, but he still had no assessment from a mental health expert or any other evidence (such as documentation of diagnoses or treatment or reports of bizarre or otherwise concerning behavior) suggesting Ward was unable to understand the criminal proceedings due to a mental health disorder or developmental disability.

"If there is testimony from a qualified expert that, because of a mental disorder, a defendant truly lacks the ability to cooperate with counsel, a competency hearing is required," but where there is no substantial evidence that a defendant's lack of cooperation is due to a mental health disorder or developmental disability, no competency hearing is required. (*People v. Lewis* (2008) 43 Cal.4th 415, 526, rejected on another point by *People v. Black* (2014) 58 Cal.4th 912, 919.)  On this record, we cannot say there was substantial evidence of incompetence as a matter of law such that the trial

12

court was *required* to suspend proceedings and hold a competency trial. In this circumstance, we defer to the trial court's decision not to declare a doubt and suspend the proceedings because it was " 'in the best position to observe the defendant.' " (*Parker*, *supra*, 13 Cal.5th at p. 29.)

Ward argues he is entitled to reversal because this case is like *Maxwell v. Roe* (9th Cir. 2010) 606 F.3d 561 (*Maxwell*). We are not persuaded. In *Maxwell*, after defense counsel expressed a doubt about his client's competence, the trial court held a competency trial and found defendant Maxwell competent. More than a year later, the case was assigned for trial, at which point, "Maxwell's behavior in and outside the courtroom was erratic, irrational, and disruptive," and his attorney "repeatedly alerted the court that Maxwell's condition was worsening and that communication with Maxwell was severely strained." (*Id*. at p. 565.) Maxwell "made noises and blurted out obscenities in the courtroom," his attorney told the court Maxwell was in the psychiatric unit at the jail, and he opined that Maxwell was " 'getting worse, or deteriorating.' " (*Id*. at p. 569.) In a discussion about courtroom security, a sergeant reported that "Maxwell had undergone numerous psychiatric evaluations pursuant to California Welfare and Institutions Code section 5150, had been prescribed psychiatric medication which he refused to take, and had assaulted another inmate with a knife." (*Ibid.*, fn. omitted.) As the trial progressed, "Maxwell's counsel advised the court of Maxwell's increasingly irrational and paranoid behavior." (*Id*. at p. 570.) Then, about half-way through the trial, Maxwell attempted suicide and was sent to a hospital for a 72-hour psychiatric hold. (*Id*. at p. 565.) "After two psychiatrists evaluated Maxwell, his initial 72-hour psychiatric hold was extended to a 14–day involuntary psychiatric hold. Nevertheless, the trial proceeded." (*Id*. at p. 566.) In those circumstances, the Ninth Circuit Court

13

of Appeals concluded there was substantial evidence requiring the trial court to declare a doubt and hold a second hearing regarding competence. (*Id*. at p. 568.)

The Ninth Circuit reasoned, "In addition to Maxwell's conduct in the courtroom, the trial judge was aware of Maxwell's mental health history and contemporaneous behavior outside of the courtroom. This additional information would have raised a bona fide doubt in the mind of a reasonable trial judge about whether Maxwell was competent to stand trial. Maxwell was on antipsychotic drugs at the time of his trial and had a known history of mental illness. The panoply of drugs he was administered during trial, and his reported failure to take them 'alone should have raised concerns.' [Citation.] . . . [Furthermore,] Maxwell's attempted suicide—taken in the context of his pre-trial behavior, strained communication with defense counsel, mental health history, antipsychotic medications, and subsequent psychiatric detentions—would have raised a doubt in a reasonable judge." (*Maxwell*, *supra*, 606 F.3d at pp. 570–571.)

The evidence in Ward's case is nothing like the circumstances presented in *Maxwell*. Ward had no record of detentions under Welfare and Institutions Code section 5150 and no known mental health diagnoses, there was no evidence that he was prescribed medication that he was not taking or that he was housed in the mental health unit of the jail, he displayed no erratic or disruptive behavior in court, he did not appear to be a danger to himself or others, and defense counsel never described him as irrational or paranoid. Ward's reliance on *Maxwell* is therefore misplaced.[7]

---

[7] In his reply brief, Ward cites *People v. Rodas* (2018) 6 Cal.5th 219, which is likewise inapposite. In that case, our high court held, "[W]hen a formerly incompetent defendant has been restored to competence solely or primarily through administration of medication, evidence that the defendant

14

Substantial evidence requires more than " 'statements of defense counsel that defendant is incapable of cooperating in his defense.' " (*People v. Ghobrial, supra,* 5 Cal.5th at p. 270.)  Because there was no additional evidence of incompetence in this case, suspension of proceedings was not required, and we see no abuse of discretion.

B.      *The Denial of Defense Counsel's Motion to Be Relieved*

Ward next contends the trial court committed reversible error when it denied defense counsel's motion to withdraw.

1.      <u>Background</u>

On November 20, 2020, defense counsel filed a motion to be relieved as counsel on the ground "the absence of communication result[ed] in counsel's inability to effectively represent defendant."  The memorandum of points and authorities in support of the motion was three sentences long.  It read: "When a defendant's right to counsel would be substantially impaired by continuing with the present attorney, the trial court may discharge the attorney and substitute new counsel. (*People v Marsden* (1970) 2 C[al.]3d 118, 123.)  The substantial impairment in this case is defense counsel's inability to effectively prepare for jury trial due to the defendant's ongoing inability or unwillingness to speak with his attorney.  [¶] Therefore, [defense counsel] must move to be relieved as attorney of record."

At the hearing on the motion on November 25, the prosecutor objected to defense counsel's motion.  He stated, "This case is set for jury trial on

---

is no longer taking his medication and is again exhibiting signs of incompetence will generally establish such a change in circumstances and will call for additional, formal investigation before trial may proceed." (*Id.* at p. 223.)  But, in this case, there was no evidence that Ward has ever been found incompetent to stand trial or that Ward needed medication to maintain coherence.

15

Monday," and suggested the motion was untimely because it was based on Ward "not talking to this defense attorney," which was, apparently, a "state of affairs [that] was occurring before . . . the case was even set for trial."

Defense counsel agreed "that this motion incorporates some of what I . . . spoke to the Court about, in doing the in-camera hearing regarding a previous lack of communication." He told the court, "[T]he reason I have now filed this is that that pattern has continued." He elaborated, "I also visited [Ward] Monday night, and I attempted to discuss the case with him and he did not communicate with me, other than to repeatedly say, I don't understand. [¶] So having just asked the Court to declare a doubt at the previous hearing I did not feel it was appropriate to try to get a time waiver out of my client, who had not been communicating with me at all or expressing any comprehension of the proceedings.

"So I understand that the trial is imminent, but I feel like I have to make record that I don't see that I can provide effective assistance of counsel without having any meaningful discussions with my client now or in the recent past."

The trial court denied defense counsel's motion to be relieved as counsel.

### 2. Analysis

"The determination whether to grant or deny a motion by an attorney to withdraw is within the sound discretion of the trial court and will be reversed on appeal only on a clear showing of abuse of discretion." (*People v. Sanchez* (1995) 12 Cal.4th 1, 37 (*Sanchez*), disapproved of on another point by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

A "total breakdown in the relationship between defendant and her attorney provide[s] adequate grounds for the trial court to relieve that

16

attorney." (*People v. Cohen* (1976) 59 Cal.App.3d 241, 249.)  But, where the "defendant does not show that any disagreement with counsel resulted in a complete breakdown in the attorney-client relationship that jeopardized his right to a fair trial," it is not an abuse of discretion to deny defense counsel's motion to withdraw.  (*Sanchez, supra,* 12 Cal.4th at p. 37.)

Here, it was defense counsel's burden as the moving party to show "a complete breakdown in the attorney-client relationship that jeopardized [Ward's] right to a fair trial" (*Sanchez, supra,* 12 Cal.4th at p. 37).  On this record, we cannot say defense counsel made such a showing as a matter of law.  Consequently, we cannot conclude the trial court abused its discretion in denying the motion.  (Cf. *People v. Smith* (2003) 30 Cal.4th 581, 606 (*Smith*) [where defense counsel said "that he could not disagree that the 'relationship [has] broken down to the extent that I can no longer competently represent [defendant],' " it was not an abuse of discretion to deny the defendant's motion for new counsel as the trial court was not *required* to find that an irreconcilable conflict existed].)

Ward argues the trial court erred in failing to "make a satisfactory inquiry to confirm an intact [attorney-client] relationship, ensure adequate representation, and create a record for review."  We disagree.  The trial court heard defense counsel's argument and asked, "Anything else?"  Thus, defense counsel was given a reasonable opportunity to make a record.  (Cf. *Smith, supra,* 30 Cal.4th at p. 606 [rejecting a defendant's claim "he 'was denied the opportunity to develop a record sufficient for this court to review the error in light of all of the evidence,' " where "the court gave defendant full opportunity to air all of his complaints [in support of his motion for new counsel], and counsel to respond to them"].)  Notably, there is no evidence or claim that

17

Ward himself believed there was a complete breakdown in the attorney-client relationship.

Now on appeal, Ward asserts he received ineffective assistance of counsel due to the asserted breakdown in communication between himself and defense counsel. The Attorney General responds that Ward has failed to show prejudice, which is required to establish a claim of ineffective assistance of counsel. As we understand his argument, however, Ward does not claim the record on appeal affirmatively demonstrates that defense counsel provided ineffective assistance of counsel. Rather, Ward argues he is entitled to remand with instructions to the trial court that it "conduct a *proper judicial inquiry* [and] make a complete appellate record" regarding "the asserted conflict and the claimed irreconcilable breakdown of communication." (Italics added.) Ward argues that, if upon remand, "the inquiry shows that failure to replace appointed counsel substantially impaired his right to effective counsel," then "the trial court must grant the motion to withdraw."

For his argument that remand is necessary, Ward relies on the Ninth Circuit's *Schell v. Witek* (9th Cir. 2000) 218 F.3d 1017 (*Schell*), but the case is inapposite. In *Schell*, the California state trial court was informed that a conflict had arisen between defendant Schell and defense counsel regarding how to prepare the defense and that Schell wanted to relieve defense counsel and appoint substitute counsel (that is, Schell raised a *Marsden* motion[8]).

---

[8] A *Marsden* motion (*People v. Marsden, supra,* 2 Cal.3d 118) refers to a defendant's request for new counsel on the ground appointed counsel is providing ineffective assistance. (*Smith, supra,* 30 Cal.4th at p. 604.) When a defendant makes a *Marsden* motion, "the trial court *must* permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate

18

But the trial court never addressed Schell's motion requesting substitute counsel. "Apparently, [the motion] simply got lost in the shuffle." (*Id*. at p. 1021.) Schell's direct appeals and petitions for writ of habeas corpus in California state court were unsuccessful; as a result, "[n]o state tribunal held a hearing to explore Schell's allegations against his lawyer." (*Ibid*.) Schell then filed a habeas petition in federal district court, which denied the petition without an evidentiary hearing. (*Id*. at p. 1021.)

In Schell's appeal from the federal district court's summary denial of his habeas petition, the Ninth Circuit Court of Appeals held, "[A] state trial court has no discretion to *ignore* an indigent defendant's timely motion to relieve an appointed attorney." (*Schell*, *supra*, 218 F.3d at p. 1025, italics added.) Because the trial court erred by failing to consider Schell's *Marsden* motion at all, the Ninth Circuit remanded the habeas petition "to the district court with instructions to conduct an evidentiary hearing to determine (1) the nature and extent of the conflict between Schell and his attorney, and (2) whether that conflict deprived Schell of the representation to which he was entitled by the Sixth Amendment." (*Id*. at p. 1027.)

Ward's reliance on *Schell* is misplaced. In *Schell*, the trial court never held a hearing on the defendant's motion for substitute counsel and never heard or considered his complaints about defense counsel. Here, in contrast, the trial court held a hearing on defense counsel's motion to be relieved and allowed him to make a record on the issue. And, as discussed above, we reject Ward's claim that the trial court failed to conduct an adequate inquiry on defense counsel's motion. *Schell* does not mandate remand on the very

---

representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*Ibid*., italics added.)

different facts of this case. While the trial court did not explain its reasons for denying the motion, it would not have been an abuse of discretion to deny defense counsel's motion to be relieved as untimely, where it was filed only 10 days before trial was then set to start. (See *Mandell v. Superior Court* (1977) 67 Cal.App.3d 1, 4 ["the court has discretion to deny an attorney's request to withdraw where such withdrawal would work an injustice or cause undue delay in the proceeding"]; *People v. Murphy* (1973) 35 Cal.App.3d 905, 921 [where the "motion was simply not timely made," "the trial court cannot be accused of abuse of discretion"].) Accordingly, we find no error in the trial court's denial of defense counsel's motion to be relieved.

C.    *Remand for Resentencing Under S.B. 567*

S.B. 567 "amended section 1170, subdivision (b) (section 1170(b)) to alter a trial court's discretion to choose the lower, middle, or upper term for a crime with a sentencing triad." (*People v. Fox* (2023) 90 Cal.App.5th 826, 830 (*Fox*).)

At the time Ward was sentenced, section 1170 gave the trial court broad authority to select the term (lower, middle, or upper) that "in the court's discretion, best serve[d] the interests of justice." (Former § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 15.) As amended by S.B. 567, however, section 1170, subdivision (b)(2), now provides, "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2) (§ 1170(b)(2)).)

20

Ward argues this case must be remanded for resentencing because the trial court imposed upper terms for rape and kidnapping, but no aggravating facts were stipulated to by Ward or found true by a jury beyond a reasonable doubt as required under section 1170(b)(2). The Attorney General agrees that the changes to 1170(b) made by S.B. 567 apply retroactively to this case but takes the position Ward is entitled to no relief because he stipulated to the upper terms as part of his plea bargain.

As noted in *Fox*, "The Courts of Appeal are split on whether a defendant . . . who received the upper term under a plea agreement for a stipulated sentence is entitled to a remand under Senate Bill No. 567, and the issue is pending before the Supreme Court. (*People v. Todd* (2023) 88 Cal.App.5th 373, 381–382 (*Todd*) [defendant entitled to remand]; *People v. Sallee* (2023) 88 Cal.App.5th 330, 340–341 (*Sallee*) [defendant not entitled to remand]; *People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1057–1059 (*Mitchell*), review granted Dec. 14, 2022, S277314 [same].)" (*Fox*, *supra*, 90 Cal.App.5th at p. 830.)

We have considered the cases on both sides of the split, and we are persuaded that Ward is entitled to remand for resentencing under the California Supreme Court's reasoning in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), as applied in *Todd* and *Fox*.

"In *Stamps*, the defendant, who had pled guilty in exchange for a specified term, requested that his case be remanded so that the trial court could consider striking his serious felony prior conviction under newly-amended section 1385, subdivision (a), which went into effect while his appeal was pending. (*Stamps*, *supra*, 9 Cal.5th at p. 692.) Despite Stamps's admission of the five-year prior conviction as part of a negotiated disposition, because the new provision applied retroactively on appeal, the Supreme

21

Court determined that the defendant should be given the opportunity to seek the court's exercise of its newly-authorized discretion under the amended section 1385. (*Id.* at p. 707.)" (*Todd, supra*, 88 Cal.App.5th at p. 380.)

In *Todd*, the Court of Appeal concluded that defendant Todd, who had entered a plea agreement with a stipulated sentence that included an upper term before S.B. 567 went into effect, similarly should be allowed the opportunity to seek resentencing in compliance with newly-amended section 1170(b), which applied to Todd's case retroactively. (*Todd, supra*, 88 Cal.App.5th at p. 381.) The court explained: "The trial court sentenced Todd to the upper term based solely on the fact that the sentence was a term of his negotiated plea agreement. It did not state on the record that it relied upon any aggravating factors when sentencing Todd to that term. Because the court's imposition of the aggravated term does not comply with the requirements of section 1170, subdivision (b), as amended by Senate Bill No. 567, remand for resentencing is not futile, as the Attorney General contends, but is necessary for the trial court to comply with the new mandates of section 1170, subdivision (b)." (*Ibid.*)

Considering the current split of authority, Division One of our court concluded, "*Todd*'s holding is compelled by *Stamps*, and we decline to follow *Mitchell* and *Sallee*" (cases in which the courts held remand for resentencing under S.B. 567 was not necessary because the defendants had stipulated to upper terms). (*Fox, supra*, 90 Cal.App.5th at p. 833.) The *Fox* court reasoned: "As *Stamps* explained, the fact that a defendant agreed to a specific term prevents a trial court from striking a prior-felony-enhancement while imposing the balance of a stipulated sentence, but it does not prevent the court from striking the enhancement and permitting the prosecution to withdraw from the plea agreement. (*Stamps, supra*, 9 Cal.5th at pp. 701,

22

707.)  This is because a trial court's 'exercise of its new discretion to strike the serious felony enhancement, whether considered a new circumstance in the case or simply a reevaluation of the propriety of the bargain itself, would fall within the court's broad discretion to withdraw its prior approval of the plea agreement.'  (*Id.* at p. 708.)

"By the same reasoning, although a defendant who agreed to a specific term cannot be resentenced to the middle or lower term while retaining the other benefits of the plea bargain, the defendant may still seek relief under Senate Bill No. 567 with the understanding that if the trial court grants relief, the plea bargain is unlikely to survive.  The amendment of section 1170(b) to make the middle term the presumptive term unless aggravating circumstances are proven is a significant legal change that could well affect a court's evaluation of a plea bargain's fairness.  (See *Stamps*, *supra*, 9 Cal.5th at pp. 708–709.)  Indeed, whereas under Senate Bill No. 1393 [the new law at issue in *Stamps*] a sentence is lawful regardless of whether a trial court exercises its discretion to strike an enhancement, under Senate Bill No. 567 an upper-term sentence is not even authorized unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt.  (See § 1170(b)(2); *Todd*, *supra*, 88 Cal.App.5th at pp. 378–379.)  Thus, the statutory amendment here warrants a remand even more clearly than did the one in *Stamps*."  (*Fox*, *supra*, 90 Cal.App.5th at p. 834.)

We agree with *Todd* and *Fox* and will remand to allow Ward to seek relief under S.B. 567.  On remand, Ward may " 'waive or invoke the requirements of section 1170[(b)].'  (*Todd*, *supra*, 88 Cal.App.5th at p. 381.)  If [Ward] does not waive those requirements, the trial court must determine whether the upper term can be imposed in compliance with section 1170(b).

If it can be so imposed, then the sentence will stand.  But if it cannot, and the prosecution does not acquiesce to a reduced sentence or the trial court no longer approves of the plea agreement with the reduction, the court must 'return the parties to the status quo.' (*Todd*, at pp. 381–382.)" (*Fox, supra*, 90 Cal.App.5th at p. 835.)

D.    *Probation Report Fee*

At the sentencing hearing in April 2021, the trial court ordered Ward to pay various fines and fees, including a probation report fee of $176, which, at the time, was authorized under former section 1203.1b (as amended by Stats. 2020, ch. 92, § 47).

Effective July 1, 2021, however, A.B. 1869 " 'eliminate[d] the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and . . . eliminate[d] all outstanding debt incurred as a result of the imposition of [identified] administrative fees.' (Stats. 2020, ch. 92, § 2.)" (*People v. Greeley* (2021) 70 Cal.App.5th 609, 625.) A.B. 1869 added section 1465.9, which provides in relevant part, "The balance of any court-imposed costs pursuant to Section . . . 1203.1b . . . shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (§ 1465.9, subd. (a).)

The parties agree that the portion of the judgment imposing the $176 fee must be vacated.  We agree and will vacate the fee.  (See *People v. Greeley*, *supra*, 70 Cal.App.5th at pp. 626–627.)

**DISPOSITION**

The portion of the judgment imposing a $176 fee under former section 1203.1b is vacated.  The matter is remanded for further proceedings consistent with this opinion.  On remand, Ward may request relief under S.B.

24

567.  (*Fox, supra*, 90 Cal.App.5th at p. 835.)  The judgment is otherwise affirmed.

                                             _____

                                             Miller, J.

WE CONCUR:

_____

Richman, Acting P.J.

_____

Markman, J.*

A162830, *People v. Ward*

---

     * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.